Rehab Hospital Services Corporation, Petitioner *v.* Health Systems Agency of Southwestern Pennsylvania, Respondent.

Rehab Hospital Services Corporation, Petitioner *v.* Harmarville Rehabilitation Center, Inc., Respondent.

Commonwealth of Pennsylvania, Department of Health, Petitioner *v.* Harmarville Rehabilitation Center, Inc., Respondent.

Commonwealth of Pennsylvania, Department of Health, Petitioner *v.* Health Systems Agency of Southwestern Pennsylvania, Respondent.

Argued February 2, 1984, before Judges CRAIG, DOYLE and COLINS, sitting as a panel of three.

*Richard DiSalle,* with him *Edward C. Schmidt and Templeton Smith, Jr., Rose, Schmidt, Dixon & Hasley,* of counsel, *Edward F. Shay, Gosfield & Shay,* for petitioner, Rehab Hospital Services Corporation.

*Ruth M. Siegel,* Chief Counsel, with him *Carolyn B. McClain,* Assistant Counsel, *Thomas D. Rees,* Dep-

uty General Counsel, and *LeRoy S. Zimmerman*, Attorney General, for petitioner, Pennsylvania Department of Health.

*Eric W. Springer*, with him *Barbara Blackmond and James C. McManus, Horty, Springer & Mattern, P.C.*, for respondents, Harmarville Rehabilitation Center, Inc. and Health Systems Agency of Southwestern Pennsylvania.

OPINION BY JUDGE COLINS, April 30, 1984:

This is a consolidated appeal from two decisions of the State Health Facility Hearing Board (Board). Petitioners, Rehab Hospital Services (Rehab) and the Commonwealth of Pennsylvania, Department of Health (Department) appeal the reversal by the Board of the Secretary of Health's grant of a certificate of need (CON) to Rehab.

Rehab filed an application for a CON with the Department on February 17, 1982. Respondent Health Systems Agency (HSA), a regional planning agency, which includes local citizens and health care providers, requested additional information on March 18, 1982, advising Rehab that their application was incomplete. Rehab supplied additional information through August 4, 1982. On May 28, 1982 Rehab exercised its right to demand that its application be reviewed. The HSA referred the application to the Project Review Committee IV (Committee) of the Allegheny Sub-Area Advisory Council. On July 8, 1982, the Committee voted to recommend disapproval of the application, although they found the project financially feasible and the per diem charge to be low compared to other facilities. On July 21, 1982 the Allegheny Sub-Area Advisory Council voted to recommend disapproval. The HSA Board voted on July 28, 1982 to recommend disapproval of the application.

The Department staff prepared a summary and made a recommendation that the application be disapproved. The Secretary approved the project and on November 5, 1982 the Department approved the project and granted a CON.

On November 30, 1982 the HSA and Harmarville each filed a Notice of Appeal to the grant of the CON.

The Board took testimony from the Secretary and made numerous findings of fact. Their conclusions of law were that the Department's decision was not based solely on the record, thus violating Section 702-(f)(2) of the Health Care Facilities Act (Act)[1]. This was apparently because of the Secretary's testimony that he had also relied upon his years of experience in evaluating the application. The Board then reversed the Department's order granting Rehab's CON.

This somewhat cumbersome procedure is mandated by the Act.[2] The purposes of the Act were enumerated as follows:

> The General Assembly finds that the health and welfare of Pennsylvania citizens will be enhanced by the orderly and *economical* distribution of health care resources to prevent needless duplication of services. Such distribution of resources will be furthered by governmental involvement to coordinate the health care system. Such a system will enhance the public health and welfare by making the delivery system responsive and adequate to the needs of its citizens, and assuring that new health care services and facilities are efficiently and effectively used; that health care services and

---

[1] Act of July 19, 1979, P.L. 130, No. 48, §702, 35 P.S. §448.702 (f)(2).

[2] 35 P.S. §448.101-904.

facilities continue to meet high quality standards; and, that all citizens receive humane, courteous, and dignified treatment. In developing such a coordinated health care system, it is the policy of the Commonwealth to foster responsible private operation and ownership of health care facilities, *to encourage innovation and continuous development of improved methods* of health care and to aid efficient and effective planning using local health systems agencies. It is the intent of the General Assembly that the Department of Health foster a sound health care system which provides for quality care at appropriate health care facilities throughout the Commonwealth. (Emphasis added.)[3]

Under this Act, the Department must act as a statewide health planning and development agency, following the directives of Subchapter XIII of the Federal Public Health Services Act.[4] The Health Care Facilities Act further states its purpose in §448.202:

*Encouragement of competition and innovation*

The health system agencies and the department shall in their planning and review activities *foster competition* and *encourage innovations* in the financing and delivery systems for health services that will *promote economic behavior by consumers and providers of health services* and that lead to appropriate investment, supply and use of health services. To this end, the health systems plan and the annual implementation plan adopted by the health systems agencies and State Health Plan shall include an assessment of the current and

---

[3] *Id.* at §448.102.

[4] 42 U.S.C. §§300k-1 (1975).

potential scope of competition and market forces to establish appropriate investment and utilization patterns in the Commonwealth and shall specify the public and private actions needed to strengthen these forces. Revisions of the plan shall assess individual services or types of providers as to whether the conditions for competition have improved in the period since the last plan. (Emphasis added.)

This policy seems to reflect the intent of Subchapter XIII particularly §300 k-2[5] which specifies:

National health priorities; strengthening competition in supply of services.

(a) The Congress finds that the following deserves priority consideration in the formulation of national health planning goals and in the development and operation of Federal, State and area health planning and resources development programs:

. . . .

(7) the development by health service institutions of the capacity to provide *various levels of care* (including intensive care, acute general care, and extended care) on a geographically integrated basis.

. . . .

(13) the adoption of policies which will (A) *contain the rapidly rising costs* of health care delivery, (B) insure *more appropriate use of health care services,* and (C) *promote greater efficiency* in the health care delivery system.

. . . .

(17) *The strengthening of competitive forces* in the health services industry whenever com-

---

[5] *Id.* at §300k-2.

petition and consumer choice can constructively serve, in accordance with subsection (b) of this section, *to advance the purposes of quality assurance, cost effectiveness, and access.*

(b)(1) The Congress finds that the *effect of competition* on decisions of *providers* respecting the supply of health services and facilities is *diminished.* The primary source of the lessening of such effect is the *prevailing methods of paying for health services by public and private health insurers, particularly for inpatient health services* and other institutional health services. As a result, there is duplication and excess supply of certain health services and facilities, *particularly in the case of inpatient health services.*

(3) For the health services for which competition appropriately allocates supply consistent with health systems plans and State health plans, health systems agencies and *State health planning and development agencies should in the performance of their functions* under this subchapter *give priority* (where appropriate to advance the purposes of quality assurance, cost effectiveness and access) *to actions which would strengthen the effect of competition on the supply of such services.* (Emphasis added.)

At the risk of belaboring the point, it seems quite clear that Congress and our legislature are concerned with rising health care costs and the fact that health insurance usually reimburses these costs has caused competition to diminish. To stem this rising tide, legislation has been passed with the express purpose of fostering competition and reducing costs, particularly by the encouragement of health care facilities which can treat inpatients at a lower per diem rate.

The health systems agencies were also given this mandate in §300 1-2[6] where Congress declared that the:

Functions of health systems agencies health planning as primary responsibility, influence on government action

A.  for the purpose of—

(1)  improving the health of residents of a health service area,

(2)  increasing the accessibility (including overcoming geographic, architectural, and transportation barriers), acceptability, continuity, and quality of the health services provided them,

(3)  *restraining increases in the cost* of providing them health services,

(4)  preventing unnecessary duplication of health resources, and

(5)  *preserving and improving* in accordance with section 300 k-2(b) of this title, *competition* in the health service area.  (Emphasis added.)

In his testimony at the hearing before the Board, the Secretary stated that he had rejected the advice of his staff and the prior recommendations made by the HSA and various committees because he had reviewed the staff summary and based on this information he believed that the application should be approved.  This was partly because of the lower per diem cost, but also to foster competition in an area where rehabilitation services were often provided in acute care hospitals at a much greater cost.

We would note also that the presence of possible competitors on evaluative committees would probably stifle any competition and the final decision of the Secretary would be a safeguard against this.  Surely

---

[6] *Id.* at §3001-2.

other health care facilities would not wish to foster competition. Harmarville, being apparently the largest such facility in the area in question, would undoubtedly be averse to any other large facility being built in the area. While we may question the wisdom of the legislature in creating this review process, we are bound by it. A more impartial procedure would seem advisable.

The Secretary's findings certainly support the granting of the CON:

1. The project is a less costly method of providing rehabilitation services.

2. The project is financially feasible with reasonable patient charges.

3. The proposed project fosters competitiveness [sic] in the health care system by advancing quality assurance cost containment and responsiveness to consumer preferences.[7]

It certainly would be ridiculous to require that the Secretary follow the recommendation of his staff if he disagrees with the reasons for it or the policy behind it. This would be analogous to a Judge being compelled to follow the advice of his law clerks when he disagrees with their conclusion. Rather the Secretary is appointed to be the final arbiter concerning the granting or not of a CON. After reviewing the report of his staff, including reports of the HSA and the applications, he decided that this type of facility was needed and that Rehab could supply it. His subjective knowledge does not render the decision improper if, in fact, it is based upon information present within the record. We expect the Secretary to utilize the experience and background for which presumably he was chosen for this office. It is clear that §702-

---

[7] Document No. 29 of the certified record of the Department of Health.

(f).(2) of the Act[8] is intended to prevent any outside influence to bear upon the decision.

> (2) All decisions of the department shall be based solely on the record. No ex parte contact regarding the application between any employee of the department who exercises responsibilities respecting the application and the applicant, any person acting on behalf of the applicant or any person opposed to the issuance of the certificate of need shall occur after the commencement of a hearing on the application and before a decision is made by the department.

There is no indication that this occurred.

The Board's scope of review is specifically limited to three areas: "(1) Whether the decision of the Department is supported by substantial evidence, (2) Whether there was any violation of constitutional or statutory law or the regulations of the Department, (3) Whether there was any prejudicial procedural error committed during the review."[9]

As previously noted, the Department's decision was supported by substantial evidence. As can be seen in the voluminous record,[10] the fact that the Secretary was also influenced by policy considerations and by his own knowledge and experience does not negate the fact that there is more than adequate evidence in the record. The Secretary did not violate Section 702(f)(2) of the Act because his decision was

---

[8] 35 P.S. §448.702(f)(2).

[9] 37 Pa. Code §197.45.

[10] The Department's findings in the certified record of the Department of Health, documents numbered 29, 30 and 32. *See also* document numbered 22 concerning lower costs and need in the community. The record, consisting of several hundreds of pages, amply provides documentation that the decision to grant a CON was based upon substantive evidence.

based upon the record and there is no indication of any ex parte contacts.

The Board exceeded its scope of review by substituting its own evaluation of the evidence for that of the Department. The Department's decision was clearly supported by substantial evidence in the record. There being no constitutional error nor violation of departmental regulations, the CON must be issued.

Accordingly, we reverse.

### Order in 2373 C.D. 1983

And Now, April 10, 1984, the decision of the State Health Facility Hearing Board is reversed and this matter is remanded to the Department of Health. The Department of Health is directed to issue a Certificate of Need to Petitioner. Jurisdiction relinquished.

### Order in 2374 C.D. 1983

And Now, April 30, 1984, the decision of the State Health Facility Hearing Board is reversed and this matter is remanded to the Department of Health. The Department of Health is directed to issue a Certificate of Need to Petitioner. Jurisdiction relinquished.

### Order in 2470 C.D. 1983

And Now, April 30, 1984, the decision of the State Health Facility Hearing Board is reversed and this matter is remanded to the Department of Health. The Department of Health is directed to issue a Certificate of Need to Petitioner. Jurisdiction relinquished.

### Order in 2471 C.D. 1983

And Now, April 30, 1984, the decision of the State Health Facility Hearing Board is reversed and this matter is remanded to the Department of Health. The Department of Health is directed to issue a Certificate of Need to Petitioner. Jurisdiction relinquished.