527 A.2d 1067

Metropolitan Hospital, Petitioner *v.* Commonwealth of Pennsylvania, Department of Health, Respondent.

Argued December 9, 1986, before President Judge CRUMLISH, JR., Judge BARRY, and Senior Judge BARBIERI, sitting as a panel of three.

*Bruce W. Kauffman,* with him, *Jonathan Vipond, III,* and *James J. Rodgers, Dilworth, Paxson, Kalish & Kauffman;* Of Counsel: *Robert M. Silverman,* for petitioner.

*Ruth E. Granfors,* Assistant Counsel, with her, *Jonathan P. Neipris,* Chief Counsel, for respondent.

OPINION BY SENIOR JUDGE BARBIERI, June 18, 1987: Metropolitan Hospital (Metropolitan), Petitioner, appeals here an order of the State Health Facility Hear-

ing Board (Board) which affirmed a decision of the Department of Health (Department) denying Petitioner's application for a Certificate of Need (CON). We affirm.

Metropolitan, the largest osteopathic hospital in Pennsylvania, made application for a Certificate of Need seeking authorization to expand its cardiovascular program to include cardiac catheterization services and open heart surgery. Metropolitan's application was submitted to the Health Systems Agency of Southeastern Pennsylvania (HSA) pursuant to provisions in Sections 701 and 702 of the Health Care Facilities Act (Act), Act of July 19, 1979 P.L. 130, *as amended,* 35 P.S. §448.701-702 (Supp. 1986). HSA, after receiving and reviewing appropriate advisories, recommended that the Department deny the application. The Department, carrying out its own review, acting by the Secretary of Health, denied the application on January 4, 1985. On Metropolitan's appeal to the Board, the filing of a stipulation of facts and a hearing, the Board affirmed the Department's decision to deny the application in an order dated December 18, 1985. This timely appeal here followed.

Section 102 of the Act Provides:

The General Assembly finds that the health and welfare of Pennsylvania citizens will be enhanced by the orderly and economical distribution of health care resources *to prevent needless duplication of services.* Such distribution of resources will be furthered by governmental involvement to coordinate the health care system. Such a system will enhance the public health and welfare by making the delivery system responsive and adequate to the needs of its citizens, and assuring that new health care services and facilities are efficiently and effectively used; that health care services and facilities con-

tinue to meet high quality standards; and, that all citizens receive humane, courteous, and dignified treatment. (Emphasis added.)
35 P.S. §448.102 (Supp. 1986).

As can be seen from the stated purpose of the Act, particularly the emphasized portion of the first sentence above-quoted, it was a major mission of the Legislature in enacting the legislation that there be prevention of "needless duplication of *services*."

The Department, by the Secretary of Health, denied the application, based upon the following findings:

1. The project is not consistent with the State Health Plan (SHP). The applicant applied for an exception to the SHP but the request was denied. There is no additional need for cardiac catheterization laboratories. The SHP projects a need for 17 cardiac catheterization laboratories through 1987. Presently, the region has 23 cardiac catheterization laboratories. Also, the Department finds that there is no need for additional open heart surgery services in this region. Currently there are 13 facilities approved to provide open heart services in this region.

2. The State Health Plan requires all existing cardiac catheterization laboratories to be operating at 85% efficiency (510 procedures) per laboratory per hospital. Currently there are at least 12 underutilized laboratories in this region based on the latest data available at the time of Metropolitan Hospital's review at the Health Systems Agency. Using the most recent data (FY 84) available at the time of its review, the Department found nine laboratories in the area to be underutilized.

3. Cardiac catheterization is considered a regional service. Metropolitan Hospital's travel

time to existing facilities offering cardiac catheterization services is well within the time limits prescribed in the State Health Plan.

4. The project is a duplication of services that represents an unnecessary addition to health care costs in the region.

5. The Department of Health considered the availability of these services for osteopathic physicians and those patients desiring an osteopathic approach to health care and concluded that Metropolitan Hospital did not demonstrate that there is a significant medical distinction between cardiac catheterization or cardiac surgery performed by allopathic physicians and the same procedures performed by osteopathic physicians.

(Letter of Secretary of Health denying application, 1/24/85.)

Metropolitan contended before the Board, as it does here, that there was a failure of the Department to consider the provisions of Section 707(a)(14) of the Act, 35 P.S. §448.707(a)(14), since that provision specifically requires that there be consideration of the need and availability for both "allopathic and osteopathic physicians and their patients," referring to the first sentence of Subsection 14 which states:

Consideration of the need and availability in the community for services and facilities for allopathic and osteopathic physicians and their patients. . . . 35 P.S. §448.707(a)(14).

As the Board properly points out, however, that quoted portion of the subsection is followed immediately by the following:

This provision is not intended to create duplicative systems of care. 35 P.S. §448.707(a)(14).

In pointing this out, the Board stated:

Appellant contends that approval of its project will not result in a duplicative system of care, because the services which it proposes to provide will be offered in an osteopathic rather than an allopathic setting. There is considerable evidence in the record, however, to support the Department's finding that there is no significant medical distinction between cardiac catheterization or cardiac surgery performed by an allopathic physican and that performed by an osteopathic physician. Accordingly, we agree with the Department's conclusion that approval of appellant's application would result in a duplicative system of care.

Brief for Petitioner, Exhibit A, p. 11.

This conclusion by the Board is supported by authoritative definitions:

**ALLOPATHY:** A term applied to that system of therapeutics in which diseases are treated by producing a condition incompatible with or antagonistic to the condition to be cured or alleviated.

**OSTEOPATHY:** It utilizes *generally accepted physical, medicinal, and surgical methods* of diagnosis and therapy, while placing chief emphasis on the importance of normal body mechanics and manipulative methods of detecting and correcting faulty structure. (Emphasis added.)

Dorland's Illustrated Medical Dictionary (26th Ed. 1981) pp. 50 and 943.

We are aware, of course, that the Department is the ultimate trier of facts in decisions on certificates of need; and that on such applications the Board's appellate review authority is limited to the determination of whether substantial evidence supports the Department's findings, whether the Constitution, statutory law

or regulations of the Department have been violated, whether any prejudicial procedural error in the Department's review process was committed. *Department of Health v. Brownsville Golden Age Nursing Home, Inc.,* 103 Pa. Commonwealth Ct. 449, 520 A.2d 926 (1987); *Rehab Hospital Services Corp. v. Health Systems Agency of Southwestern Pennsylvania,* 82 Pa. Commonwealth Ct. 147, 475 A.2d 883 (1984). Our scope of review also is limited, especially in reviewing the discretionary acts of an agency, and we note that under well established principles of administrative law we will not substitute judicial discretion for administrative discretion unless the agency or official acted in bad faith, fraudulently, capriciously, or committed a manifest abuse of power. *See e.g., Pennsylvania State Association of Township Supervisors v. State Ethics Commission,* 92 Pa. Commonwealth Ct. 544, 499 A.2d 735 (1985); *Guers Dairy, Inc. v. Milk Marketing Board,* 90 Pa. Commonwealth Ct. 268, 494 A.2d 888 (1985), *petition for allowance of appeal denied,* No. 192 M.D. Appeal Dkt. 1985 (Pa., filed March 7, 1986). We believe that the exercise of discretion should be viewed by us with special respect when exercised by an agency such as the Department of Health where the decisions must be based on expertise in a science in which lack of competence can endanger the health of recipients of such services. The judiciary, generally, have that lack of competence and expertise.

While we find unmeritorious the many contentions presented to us by Metropolitan, we deem the principal such contention to require a brief comment. In this contention, Metropolitan asserts that the Board has misconstrued the Legislature's intention as expressed in Section 707(14) of the Act, quoted above. Metropolitan argues that the grant of a CON which it seeks would simply provide duplicate "services" and not a duplica-

12

tive "system," the latter being the only activity proscribed by Subsection 14. Metropolitan states:

> The establishment of these particular *services* in a single osteopathic hospital does not establish a duplicative *system* of care. The Department's refusal to recognize a distinction between an arguably duplicative service and a duplicative system of care is indefensible. (Emphasis in the Brief.)

Brief for Petitioner p. 18.

Aside from the somewhat semantical character of this contention, we find it flatly negated by the precise language of the Legislature's statement of purpose, also quoted above, "to prevent needless duplication of *services.*" We find that the legislative intent is that duplication of services as well of systems of care is to be avoided in the granting of Certificates of Need.

Accordingly, since we find no error of law or other impropriety by the Department or Board which we are free to disturb, we will affirm.

ORDER

Now, June 18, 1987, the Order of the State Health Facility Hearing Board, dated December 18, 1985, at No. 85-003, is affirmed.

---

DISSENTING OPINION BY JUDGE BARRY:

The majority holds that the certificate of need was properly denied. In so doing, I believe the majority commits the same legal error that was committed by both the Department of Health and the Board, *i.e.,* equating "services" with "systems of care" and rewriting Section 707 of the Health Care Facilities Act, Act of July 19, 1979, P.L. 130, *as amended,* 35 P.S. §448.707 (Supp. 1986). Hence, this dissent.

It is true that Section 102 of the Act speaks to prevention of "needless duplication of services." However, Section 707, which provides the criteria to be con-

sidered on a certificate of need application, specifically provides, "[c]onsideration of the need and availability in the community for services and facilities for allopathic and osteopathic physicians and their patients. . . . This provision is not intended to create duplicative systems of care." 35 P.S. §446.1707(14) (Supp. 1986). The Department, considering this criterion, reasoned that, granting Metropolitan's application would create "duplicative systems of care," since there was an under-utilization of the allopathic counterparts to the "service" proposed by Metropolitan. The two are not the same.

"System" is defined as "a regularly interacting or interdependent group of items forming a unified whole." Webster's New Collegiate Dictionary 1175 (1981). To classify allopathic and osteopathic facilities and/or physicians as part of the same system ignores the realities of present medical practice. "Allopathy" is defined as "a *system* of medical practice that combats disease . . . by treatments . . . that produce effects different from those produced by the disease treated." *Id*. at 30 (emphasis added). "Osteopathy" is defined as "a *system* of medical practice based on the theory that diseases are due chiefly to loss of structural integrity which can be restored by manipulation of the parts supplemented by therapeutic measures (as use of medicine or surgery)." *Id*. at 806 (emphasis added). Finally, "duplicative", while not specifically defined in Webster, is listed as an adjective of the verb "duplicate" which is defined as "to make an exact copy of. . . ." *Id*. at 351.

The fourth finding by the Department was that granting a certificate of need to Metropolitan would constitute a duplication of *services*. The criterion referred to above speaks of duplicative "systems of care" and not services. As Metropolitan correctly asserts, there being no other osteopathic facility in the area performing the services in question, granting a certificate of need to Metropolitan cannot constitute a dupli-

cate "system of care" when it is the first osteopathic facility which performs the services. Such an argument is irrefutable given the definitions of the applicable terms referred to above. Osteopathy and allopathy are by definition systems of care which are *independent* of one another.

This conclusion is buttressed by evidence in the record explaining the difficulties encountered by various osteopathic physicians when they attempted to obtain privileges to perform cardiac catheterizations or open heart surgery in allopathic hospitals. In fact, the stipulation by the parties submitted to the Board states that one osteopathic cardiologist has privileges to perform catheterizations at Episcopal Hospital but no osteopathic cardiothoracic surgeon has privileges to perform open heart surgery there; an osteopathic cardiothoracic surgeon has privileges to perform open heart surgery at Graduate Hospital but no osteopathic cardiologist has privileges to perform catheterizations there. (Stipulation of Fact, Nos. 26-29, 9/27/85). Further, there is evidence concerning the difficulties encountered by osteopathic physicians obtaining training in their chosen fields at the allopathic institutions. The upshot of all of this is that patients who require cardiac catheterization and/or open heart surgery and who choose treatment by osteopathic physicians cannot receive their chosen treatment at one facility, if at all, from osteopathic physicians. Further, osteopathic physicians desiring to perform these services are severely limited in obtaining the necessary training to do so. Refusing the certificate of need on the basis utilized in the present case is an error of law, in violation of Section 707(14) of the Act.

I would reverse the order of the Board and remand so that the certificate of need could be granted in compliance with Section 702(e)(2) of the Act.