533 A.2d 796

Grandview Surgical Center, Inc., Petitioner *v.* Holy Spirit Hospital of the Sisters of Christian Charity, Respondent.

Commonwealth of Pennsylvania, Department of Health, Petitioner *v.* Holy Spirit Hospital, Respondent.

Argued May 20, 1987, before President Judge CRUMLISH, JR., and Judges CRAIG, MACPHAIL, DOYLE, BARRY, COLINS and PALLADINO.

*Jonathan Vipond, III*, with him, *Charles E. Gutshall, Baskin, Flaherty, Elliott, Mannino & Beren, P.C.*, and *Jerry J. Weinberger, Tellie, Durkin, Weinberger, Murphy & Piazza, P.C.*, for petitioner, Grandview Surgical Center, Inc.

*Carol Brayshaw Longwell*, Assistant Counsel, with her, *Darius G. C. Moss*, Assistant Counsel, and *Jonathan P. Neipris*, Chief Counsel, for petitioner, Department of Health.

*Jack M. Mumford, Duane, Morris & Heckscher*, with him, *David W. DeLuce, Myers, Johnson, Duffie & Weidner*, for respondent.

OPINION BY JUDGE COLINS, November 19, 1987:

Grandview Surgical Center, Inc. (Grandview), appeals an order of the State Health Facility Hearing

Board (Board) which reversed the decision of the Department of Health (Department) granting Grandview a Certificate of Need (CON) to operate a free-standing ambulatory surgical center in Camp Hill, Pennsylvania. The Department has also appealed the Board's decision and both appeals are here consolidated for our consideration.

## I. *Factual History and Regulatory Framework*

We are constrained to review the lengthy factual history in the instant matter. In March, 1984, following preliminary negotiations, Grandview submitted an application for a CON with the Department and the local Health Systems Agency for Central Pennsylvania (HSA), pursuant to Section 702(b) of the Health Care Facilities Act (Act), Act of July 19, 1979, P.L. 130, 35 P.S. §448.702(b), which application sought approval for the construction of a multi-specialty ambulatory surgical center consisting of four operating rooms. Grandview's application was immediately opposed by Holy Spirit Hospital (Holy Spirit), an acute care hospital located approximately one-quarter mile from the proposed facility which itself provides in-house ambulatory surgical services.[1] The matter proceeded to a public hearing before the HSA and that agency ultimately issued a decision holding that Grandview's proposal was inconsistent with the State Health Plan (State Health Plan or Plan) and recommending disapproval of the application.

At all times relevant here, neither the local HSA health services plan nor the State Health Plan distinguished hospital inpatient operating room capacity

---

[1] The Department granted a CON for Holy Spirit's ambulatory surgical facility in 1982, which facility, as the Board found, is located on the first floor of the hospital with separate admission and recovery areas.

from ambulatory surgical capacity. The State Health Plan, described by Department Secretary H. Arnold Muller, M.D. as a "voluminous document [containing] complex criteria for the review of new institutional health services,"[2] directed the Department to disapprove any CON proposal which would result in a supply of operating rooms in excess of projected need. Accompanying statistics projected an excess operating room capacity in the pertinent provider region, Holy Spirit inclusive, by 1985. However, these statistics did not distinguish ambulatory and inpatient facilities. Moreover, the Plan recommended that "[i]n areas where additional surgical capacity is needed, free-standing ambulatory surgery programs should be considered, especially if inpatient facilities do not have a commitment to ambulatory surgery."

Prompted by cost-containment initiatives, the Plan's approval of free-standing ambulatory surgical programs and the apparent limitations imposed on such facilities by an excess of inpatient capacity, the Department convened a task force to consider the development of a new policy on ambulatory surgery, ultimately to replace the extant provisions in the Plan. At the request of its proponents, Grandview's application was deferred pending this evaluation.

In March, 1985, the Department issued CON Memorandum 85-15,[3] in which it: (1) articulated a goal

---

[2] Section 701 of the Act, 35 P.S. §448.701, provides that "no person shall offer, develop, construct, or otherwise establish or undertake to establish within this State a new institutional health service without first obtaining a Certificate of Need from the department." "New institutional health service" includes construction of a health care facility, a significant expenditure on behalf of a health care facility, the addition of a health service, and major medical equipment.

[3] CON Memorandum 85-15 was published in 15 Pa. B. 1079, March 23, 1985, and such provision is now found at 28 Pa. Code §401.6.

of promoting ambulatory surgical procedures as a cost effective alternative to inpatient surgery; (2) quantified a goal of 50% of all surgical procedures to be performed on an outpatient basis; and (3) indicated its intent to utilize the guidelines in its review of ambulatory surgical projects, pending submission of the guidelines as an amendment to the State Health Plan. The Memorandum advised applicants that all ambulatory surgical proposals would be considered as exceptions to the State Health Plan, until such time as the Plan was amended.

Department staff then reviewed Grandview's application pursuant to the above criteria, and, in consideration of data revealing that area hospitals were performing only 36.5% of total surgeries on an outpatient basis and that Grandview's charges for such services would be less than those of area hospitals, recommended approval of the application as an exception to the Plan. Secretary Muller adopted the staff recommendation, approved Grandview's application as an exception to the Plan in accordance with the newly-promulgated criteria and, by separate letter, granted the CON application.

Upon appeal to the Board, Holy Spirit raised numerous substantive objections to the Secretary's decision and challenged the procedural validity of the Department's promulgation of CON-Memorandum 85-15. The Board reversed the Secretary's decision, concluding, in essence, that Grandview did not meet its burden of demonstrating entitlement to an exception under the State Health Plan and that the Secretary's decision approving the CON application violated Section 707(a) of the Act, 35 P.S. §448.707(a), which provision mandates that CON applications be "consistent" with the Plan. The Board confined its analysis to consideration of whether the Secretary's decision to grant Grand-

view an exception to the Plan was supported by substantial evidence and thus did not reach Holy Spirit's remaining objections.[4]

## II.   *The Department's Promulgation of CON Memorandum 85-15*

We first consider the threshold challenge to the Department's authority in promulgating CON Memorandum 85-15 and in utilizing these standards to review Grandview's CON application.

This Court has exhaustively set forth the powers and duties of the Department pursuant to the Act. *See Rehab Hospital Services Corp. v. Health Systems Agency of Southwestern Pennsylvania,* 82 Pa. Commonwealth Ct. 147, 475 A.2d 883 (1984). At the risk of repeating that analysis, we emphasize that Section 201 of the Act, 35 P.S. §448.201, designates the Department as the sole statewide health planning and development agency, subject to the directives of Subchapter XIII of the Federal Public Health Service Act, 42 U.S.C. §§300k-300n-6.[5] Moreover, Section 202 of the Act requires the Department to "foster competition and encourage innovations in the financing and delivery systems for health services that will promote economic behavior by consumers and providers of health services and that lead to appropriate investment, supply and use of health services." 35 P.S. §448.202. Of course, the Department is responsible for review of all CON applications, approval or disapproval of same, and adoption of regulations, after consultation with the policy board,

---

[4] Holy Spirit now requests that we consider its outstanding arguments or, in the alternative, remand the matter to the Board.

[5] Sections 300k-1 through 300n-6 of the statute have been repealed by Section 701(a) of the Act of November 14, 1986, Pub. L. 99-660, 100 Stat. 3799.

necessary to implement CON review. Section 201(11) and (14) of the Act, 35 P.S. §448.201(11) and (14).

Section 707(a) of the Act establishes the substantive criteria for review of CON applications as follows:

(a) an application for a [CON] shall be recommended, approved, and issued when the application substantially meets the requirements listed below; provided that each decision, except in circumstances which pose a threat to public health, *shall be consistent with the State Health Plan.*

35 P.S. 448.707(a) (emphasis added).

While consistency with the Plan is required of CON applicants, such is not a static document. We repeat that the Plan is a voluminous document containing complex review criteria; it is revised at least triennially based upon plans submitted by each HSA and the recommendations of the Department. *See* Section 201(8) of the Act, 35 P.S. §448.201(8).

As comprehensive as the Plan purports to be, we surmise that its size and complexity render it fairly unresponsive to the technologically fast-paced health care marketplace. Indeed, the Plan contemplates its limitations and *internally* provides for CON review of health care services not specifically addressed therein pursuant to the so-called Exception Review Clause. This provision, defined as an "adjunct to the existing review process," grants exception status to an applicant upon a demonstration that:

1. The proposed deviation from the criteria in the [State Health Plan] is indeed a rare and uncommon case, and

2. A genuine hardship . . . exists or will exist in the community if the project is denied.

A third factor to be considered is "whether a surplus of the resources which an applicant intends to create al-

ready exists within the area." A Department decision to grant an exception pursuant to the Exception Review Clause is not a decision to grant a CON; that is, an exception may be granted and the associated CON application disapproved.

The provision speaks in only general terms of a "rare and uncommon" deviation from the Plan and "genuine hardship" to the community but provides no guidance in the interpretation of the terms within the context of the health care marketplace. Given the Department's broad grant of statutory authority in health care planning and development, we believe the particular interpretation to be given the exception clause is a matter peculiarly within the Department's expertise.

Within that judgment, the Department determined that the unique characteristics of ambulatory surgery facilities comprised a "rare and uncommon" case, the absence of which, *a fortiori,* results in hardship to the community. We will not second guess that judgment. Nor will we second guess the Department's judgment that such facilities should be promoted throughout the Commonwealth in order that 50% of all surgeries be performed on an outpatient basis. Holy Spirit now contends the appropriate percentage was the 15-40% target established in the local HSA plan at the time Grandview submitted its application. We have previously noted certain ambiguity engendered by the fact that the health services plan, both on the state and local level, considered need for ambulatory surgical capacity on the same basis as the need for hospital inpatient capacity. We thus hold the Department not bound by the lesser percentage.

We reject Holy Spirit's contention that CON Memorandum 85-15 constitutes an improper attempt to subvert the State Health Plan. The provision states that it is "an interim policy until the Statewide Health Coordinating Council makes its recommendation for the inclu-

sion of the policy as an amendment to the State Health Plan." It also clearly indicates that, until such time, applicants must request exception review.[6]

Rather than abrogating the provisions of the Plan, as Holy Spirit suggests, CON Memorandum 85-15 merely sets forth a temporary policy for interpreting the Exception Review Clause as it pertains to ambulatory surgery proposals. The guidelines do nothing more than define the specific circumstances upon which the generally-stated terms coalesce. We well envision the Department's development of comparable policies defining the Exception Review Clause in regard to *other* health care methodologies, again, an evaluation within the Department's judgment. Indeed, Holy Spirit's interpretation renders the Exception Review Clause a nullity. As applied in the instant matter, the provision speaks to health care services not sufficiently addressed in the Plan. In addition, Holy Spirit's interpretation ignores the clear language contained in Chapter 29 of the Plan, covering surgical services, which provides for "allowances [to be] made *in accordance with* the exception clause." (Emphasis added.)

Moreover, we reject Holy Spirit's contention that the provisions of CON Memorandum 85-15 constitute *de facto* regulations, not properly submitted to the review process mandated by the Regulatory Review Act.[7]

---

[6] We note allegations by Holy Spirit that Grandview did not request exception review in writing as required by CON Memorandum 85-15. In this regard, we find sufficient a letter of record, dated April 8, 1985, from Grandview to the Department which refers to an earlier request for such review. We add that Grandview deferred consideration of its CON application pending the promulgation of a Department policy on ambulatory surgical facilities; such policy was embodied in CON Memorandum 85-15. Having deferred consideration, it would have been appropriate for the Department to then review the application under the policy, even without the written request.

[7] Act of June 25, 1982, P.L. 633, *as amended,* 71 P.S. §§745.1-745.15.

The State Health Plan is not subject to the review process; it becomes effective only upon approval by the Governor. Having characterized CON Memorandum 85-15 as an interim interpretive policy which defined factors necessary to the grant of an exception pursuant to the Exception Review Clause, itself an integral facet of the Plan, we hold CON Memorandum 85-15 to be beyond the scope of the Regulatory Review Act.[8]

## III. *The Board's Decision*

Having determined that the Department properly developed and applied CON Memorandum 85-15 in evaluating Grandview's application as an exception to the State Health Plan, we turn to the substantive challenges to the Board's decision.

The Board confined its discussion to the question of whether the Department's grant of an exception was supported by substantial evidence. In this regard, it found no evidence to support findings that the proposal was a "rare and uncommon" case or that "genuine hardship" to the community would result from the denial of Grandview's application, as such criteria are specified in the Exception Review Clause of the State Health Plan. Indeed, the Board noted the Department's omission of those terms from its decision. It then assumed, for purposes of its discussion, that CON Memorandum 85-15 established the standard for the grant of an exception and found these criteria likewise unsupported by substantial evidence.

More specifically, the Board reached conclusions contrary to those made by the Secretary, finding that: (1) Holy Spirit had demonstrated an ambulatory surgical rate of 43.6% and 45.7% in fiscal years 1984 and

---

[8] We acknowledge a letter of record from the Chairman of the Regulatory Review Commission to Department Secretary Muller indicating a contrary determination but are not bound by it.

1985, respectively, and (2) area hospitals had performed 35.5% and 39.5% of total procedures on an ambulatory basis in 1983 and 1984, respectively, thus attaining the HSA's target rate of 15-40%. The Board then found these data did not support the Secretary's determination of a lack of good faith on the part of area providers in attempting to reach the 50% goal of CON Memorandum 85-15.

Grandview now submits that the Board exceeded its statutory scope of review by impermissibly substituting its judgment for that of the Secretary. The Department goes one step further and contends that an appeal of a departmental decision to grant an exception is not within the Board's jurisdiction.

Section 502(a) of the Act, 35 P.S. §448.502(a), sets forth the powers and duties of the Board, in pertinent part, as follows:

(a) The hearing board shall have the powers and its duties shall be:
(1) To hear appeals from departmental decisions on applications for certificate of need or amendments thereto.

. . . .

(3) To hear appeals from decisions of the department which require a person to obtain a certificate of need for major medical equipment or the acquisition of an existing health care facility.

. . .

In *South Chester Medical Center v. Department of Health,* 90 Pa. Commonwealth Ct. 284, 494 A.2d 885 (1985), we found the statutory provisions for the Board's authority clear and refused to expand such authority to encompass the review of a departmental decision that a proposed project did not require CON review (citing Section 1921(b) of the Statutory Construction Act of 1972, 1 Pa. C. S. §1921(b), which provides that "[w]hen

the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.")

There is no language in Section 502(a) of the Act specifically conferring jurisdiction upon the Board in an appeal from a departmental decision granting an exception to the State Health Plan. In accordance with our holding in *South Chester County Medical Center,* we might be persuaded that jurisdiction of such an appeal lies not with the Board but with this Court.

To do so, however, would unnecessarily bifurcate proceedings in the nature of the instant matter, where the grant of an exception is a prerequisite to CON approval. That is, an aggrieved party would be required to appeal the grant of an exception to this Court but the CON approval to the Board, and thence to this Court. In the interest of judicial economy, we hold that Section 502(a)(1) of the Act, 35 P.S. §448.502(a)(1), which empowers the Board to "hear appeals from departmental decisions on applications for [CONs] . . ." encompasses an appeal from a departmental grant of an exception to the State Health Plan. We are further persuaded in this regard by the language of the Exception Review Clause itself which defines such review as an "adjunct" to the existing review process.

We have yet to determine the scope of the Board's review of a departmental grant of an exception as opposed to the scope of its review of a departmental decision to approve or disapprove a CON application. This Court has comprehensively analyzed the reviewing role of the Board in regard to CON appeals in *Department of Health v. Brownsville Golden Age Nursing Home, Inc.,* 103 Pa. Commonwealth Ct. 449, 520 A.2d 926 (1987). We therein noted the restraints imposed on the Board's review of CON decisions by 37 Pa. Code

§197.45, the "procedural rule specifically applicable to CON appeals . . . [which] instructs that the Board will limit its *review* of Departmental CON decisions to three issues,[9] one of which is whether the Department's decision is supported by substantial evidence." *Id.* at 455, 520 A.2d at 926 (emphasis in original). We have found no procedural rule delineating the Board's role in reviewing the grant of an exception.

Section 707(a) of the Act directs that a CON "*shall* be recommended, approved, and issued when the application substantially meets the requirements [therein defined]." (Emphasis added.) In contrast, there is no directory language in the Exception Review Clause, and we distinguish the Department's actions in granting an exception as opposed to approving a CON application, the former being discretionary, the latter mandatory, action on the part of the Department. It is well-established that this Court cannot overturn an agency's exercise of its discretion absent proof of fraud, bad faith or blatant abuse of discretion. *Pennsylvania Game Commission v. Department of Environmental Resources*, 97 Pa. Commonwealth Ct. 78, 509 A.2d 877 (1986), *appeal granted*, 513 Pa. 643, 521 A.2d 934 (1987). We find this lesser standard applicable to the Board's review of the departmental grant of exception status, such that the Board's analysis by a substantial evidence standard was in error.

In granting Grandview an exception to the Plan, the Secretary adopted a staff analysis which concluded the project was consistent with departmental review guide-

---

[9] The regulation found at 37 Pa. Code §197.45 further limits the Board's review of departmental CON decisions to determining whether there was any violation of constitutional or statutory law or the regulations of the Department and whether there occurred any prejudicial procedural error during the review process.

lines and comprised a lower cost, more effective alternative to hospital-based surgery. The analysis compared 1984 surgical statistics from six area hospitals and found their average outpatient surgical rate to be 36.5%, less than the 50% goal articulated by CON Memorandum 85-15, and thus warranting a finding of "need" for Grandview's proposal.

The Board found this community outpatient surgical rate unsupported by substantial evidence, noting data proffered by Holy Spirit pegging its own 1984 outpatient surgery rate at 43.6%. Then assuming the Department's calculated rate of 36.5% to be accurate, the Board found this rate consistent with the 15-40% goal for outpatient surgery in the HSA Plan.

We have already determined that the Board applied an overly-stringent standard of review to the Secretary's decision. Moreover, we have discussed the ambiguity surrounding the outpatient surgery target in the HSA plan and have approved the Department's use of the greater objective. We find the Board's emphasis on statistics from a single hospital misplaced. By its own admission, Holy Spirit defined its rate as "probably one of the highest in the region" but indicated that the Hershey Medical Center, another hospital located in the pertinent provider region, reported a rate of only 20.9%. Holy Spirit no doubt fears it will bear the brunt of competition from Grandview because of its proximity to the proposed facility. While we appreciate its concern, we find no support for departmental focus upon a single provider; on the contrary, the Department's statutory directive to "establish appropriate investment and utilization patterns in the Commonwealth," Section 202 of the Act, mandates a regional approach.

The Board took issue with the Department's utilization of cost-effectiveness as a factor in the grant of exception status, noting that such factors are not defined

in CON Memorandum 85-15. However, it refused to "substitute [its] judgment" regarding a departmental finding that Grandview's charges would be 20-40% less than those of area hospitals. The Department also found that Grandview's competitive stimulus would encourage existing providers to evaluate both price and services offered to consumers.

The suggestion that cost-effectiveness cannot be a factor in departmental decisions belies the current state of the health care marketplace. "Skyrocketing expenditures for health care [have] cause[d] concern to government payors, businesses, labor, consumers and providers. As a result, cost control has become the driving force behind recent developments in the health care delivery system." Hamilton, *Barriers to Hospital Diversification: The Regulatory Environment*, 24 Duq. L. Rev. 425, 425-26 (1985). Moreover, the department is statutorily burdened with "foster[ing] competition and encourag[ing] innovations in the financing and delivery systems for health services [so as to] promote economic behavior by consumers and providers. . . ." Section 202 of the Act; *see also Rehab Hospital*. While we note contrary commentary on the effect of competition on costs,[10] we conclude that the Department acted well within its discretion in finding Grandview's proposal a benefit to the health care marketplace. We additionally find no error in the Secretary's omission of the terminology of the Exception Review Clause. Such terms are subsumed in the criteria of CON Memorandum 85-15, here adequately addressed by the Secretary.[11]

---

[10] *See Noether, Competition Among Hospitals,* Staff Report of the Bureau of Economics, Federal Trade Commission.

[11] The third factor of the Exception Review Clause, pertaining to any surplus of services, is also subsumed in the provisions of CON Memorandum 85-15.

## IV. *The CON Application*

In granting Grandview's CON application, the Secretary reiterated his findings, contained in his grant of exception status, that the project was consistent with departmental guidelines for ambulatory surgical services and provided a lower cost alternative to hospital-based surgery. He further found that the project: (1) would foster competition in the health care marketplace; (2) would promote innovation in the financing and delivery of health care services and is responsive to consumer preferences; and (3) contains costs by providing less expensive surgical services. The Secretary then adopted a staff analysis which considered the statutory CON review criteria provided in Section 707 of the Act.

The Board did not consider the merits of the Secretary's CON approval because it found that the proposal did not qualify as an exception to the State Health Plan. Having so found, the Board concluded the application violated Section 707(a) of the Act, which provision requires CON applications to be consistent with the State Health Plan.

Our scope of review in agency appeals requires that we affirm the adjudication of the Commonwealth agency unless we find that it is not in accordance with the law or that any finding of fact necessary to the adjudication is not supported by substantial evidence. *Brownsville.* Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* at 458, 520 A.2d at 930-31. We have previously determined that the Secretary acted within the scope of his discretionary authority in granting Grandview an exception to the State Health Plan pursuant to the Exception Review Clause as particularly defined by CON Memorandum 85-15. Having satisfied the criteria of the Exception Review Claus, Grandview's

application is consistent with the State Health Plan and thus accords with Section 707(a) of the Act. Moreover, we have thoroughly reviewed the voluminous record in the instant matter, including the diverse documentation submitted in support of and in opposition to Grandview's CON application, and find substantial evidence in support of the Secretary's CON approval.

Holy Spirit argues that the *Board* is the final fact-finder in CON appeals such that this Court is bound to review the Board's decision by a substantial evidence standard. This contention ignores our analysis in *Brownsville* defining the Board's role in CON appeals, as well as our holding in *Rehab Hospital* that the "Secretary is appointed to be the final arbiter concerning the granting or not of a CON." 82 Pa. Commonwealth Ct. at 155, 475 A.2d at 888.

Having found the Department's decision supported by substantial record evidence, and no constitutional nor prejudicial procedural error,[12] nor violation of departmental regulations, Grandview's CON must be issued. Accordingly, the order of the Board is reversed.

ORDER

AND NOW, this 19th day of November, 1987, the Order of the State Health Facility Hearing Board in the above-captioned matter is reversed and the case is remanded to the Department of Health. The Department of Health is directed to issue a Certificate of Need to Grandview Surgical Center, Inc.

Jurisdiction relinquished.

Judge MACPHAIL and Judge DOYLE dissent.

---

[12] On this record, we find no ex parte communication as prohibited by Section 702(f)(2) of the Act, 35 P.S. §448.702(f)(2).