567 A.2d 638

**Joseph CAMAIONE, Sr., Appellee,**

v.

**BOROUGH OF LATROBE, Appellant.**

Supreme Court of Pennsylvania.

Argued Sept. 28, 1989.

Decided Dec. 21, 1989.

Reargument Denied Feb. 20, 1990.

James E. Kelley, Jr., McDonald, Moore, Mason & Snyder, Latrobe, for appellant.

Vincent J. Quatrini, Jr., Greensburg, for appellee.

Anthony C. Busillo, II, Harrisburg, for amicus curiae, PA Lodge of the FOP.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

This is the appeal of the Borough of Latrobe (Borough) from the opinion and order of the Commonwealth Court reversing an order of the Court of Common Pleas of Westmoreland County and remanding to that court with instructions that benefits under the Heart and Lung Act[1] be restored to Joseph Camaione, Sr., (Appellee) until such time as an evidentiary hearing is conducted to establish whether Appellee's temporary disability has ceased. 113 Pa. Cmwlth. 113, 536 A.2d 500.

---

1. Act of June 28, 1935, P.L. 477, Section 1, 53 P.S., Section 637, as amended May 31, 1974, P.L. 309, No. 99, Section 1, 53 P.S. Section 637 (Supp.1981–82)

The facts underlying this matter were stipulated to by the parties and are relatively simple. Appellee, a police officer of the Borough, suffered a work-related injury on February 5, 1975. Appellee could not return to work and began receiving Heart and Lung Act benefits because he was deemed temporarily incapacitated from performing his duties.[2] Appellee was also awarded worker's compensation benefits which were paid over to the Borough as a form of subrogation in accordance with the provisions of the Heart and Lung Act.

This arrangement continued until July 27, 1981, when the Borough enacted a Resolution, effective as of September 1, 1981, requiring the retirement of the two oldest police officers on the Borough Police Force, one of whom was Appellee. This action was taken pursuant to 53 P.S. Section 46190 which permits Boroughs to retire employees eligible for pensions starting with the oldest employee and following in order of age if economic reasons exist to reduce the size of the police force.

Appellee was notified that the Borough was contemplating this action and that the Resolution was, in fact, enacted. Beginning on September 1, 1981, Appellee's regular salary check issued pursuant to the Heart and Lung Act was terminated and he began receiving the worker's compensation check directly as well as a pension check which together totalled more than the salary he had been receiving pursuant to the Heart and Lung Act.

In January, 1983, however, a referee for the Worker's Compensation Board reviewed Appellee's disability claim and, following a hearing, determined that Appellee's condition was no longer total and that an adjustment to his

2. The section pertinent to this case is found at 53 P.S. Section 637 and provides as follows:
   Any policeman ... of any Borough ... who is injured in the performance of his duties ... and by reason thereof is temporarily incapacitated from performing his duties, shall be paid by the ... municipality, by which he is employed, his full rate of salary, as fixed by Ordinance or Resolution, until the disability arising therefrom has ceased.

weekly benefits would have to be made. Because the partial disability would exist for over 500 weeks, the referee determined that a lump sum payment of $25,000.00 was in order and, accordingly, awarded this amount to Appellee which he accepted on February 22, 1983.

As a result of this action, Appellee's worker's compensation check was terminated and he continued to receive his pension check only. He now was receiving each month less than his salary had been. This situation continued for fifteen months when, on May 22, 1984, Appellee filed a complaint in Mandamus seeking to have the Borough restore his full salary under the provisions of the Heart and Lung Act. Appellee reasoned that he was entitled to his full salary as long as his disability was of a temporary nature and that he was never afforded a hearing to establish that a change in his condition had occurred. The trial court denied relief, but the Commonwealth Court reversed holding that Appellee was entitled to notice that his involuntary retirement would affect his rights under the Heart and Lung Act.

In so holding, the Commonwealth Court relied on our decision in *Callahan v. Pennsylvania State Police*, 494 Pa. 461, 431 A.2d 946 (1981), for the proposition that a police officer's status under the Heart and Lung Act could not be changed from temporary disability to permanent disability without a due process hearing. We accepted the Borough's petition for allowance of appeal to examine whether *Callahan* was properly applied in the situation where a Borough exercises its legislative prerogative under the Borough Code to control the size of its police force because of economic reasons.

When we have had occasion to review the provisions of the Heart and Lung Act, we have emphasized that this remedial legislation provides compensation for police who suffer temporary incapacity or disability in the performance of their work. The guarantee of uninterrupted income during periods of temporary disability has been cited as an attraction for service in the police force and one that

assures a reasonably speedy return to full active duty. *Kurtz v. Erie*, 389 Pa. 557, 133 A.2d 172 (1957). Compensation for total disability is not permitted under the statute and has not been allowed by this Court. *Kurtz*; *Creighan v. City of Pittsburgh*, 389 Pa. 569, 132 A.2d 867 (1957).

In addition, once it is determined that a policeman qualifies for benefits under the Heart and Lung Act, his disability status cannot be changed from temporary to permanent unless a due process hearing is afforded. *Cunningham v. Pennsylvania State Police*, 510 Pa. 74, 507 A.2d 40 (1986); *Callahan v. Pennsylvania State Police*, 494 Pa. 461, 431 A.2d 946 (1981).

We have also indicated, however, that the benefits of full compensation granted by the Act can be terminated through voluntary retirement and the Commonwealth Court and the Superior Court have both applied the statute in this manner. See, *Creighan v. City of Pittsburgh*, 389 Pa. 569, 132 A.2d 867 (1957); See also, *Hasinecz v. Pennsylvania State Police*, 100 Pa. Commonwealth Ct. 622, 515 A.2d 351 (1986) (Court indicated that benefits of act do not extend to former members of police force); and *White v. West Norriton Township*, 158 Pa. Superior Ct. 375, 45 A.2d 401 (1946) (Court held that dismissed police officer could not invoke benefits of the act.)

The other statute that comes into play in this case is the Borough Code which authorizes a borough to reduce its police force for reasons of economy.[3] This section vests authority in the Borough, as the body responsible for fiscal matters to control the size of its police and fire departments

---

3. 53 P.S. Section 46190 provides in pertinent part:
   If for reasons of economy or other reasons it shall be deemed necessary by any borough to reduce the number of paid employees of the police or fire force, then such borough shall apply the following procedure: (i) if there are any employes eligible for retirement under the terms of any retirement or pension law ... then such reduction in numbers shall be made by retirement of such employes, starting with the oldest employe and following in order of age respectively.

by implementing cuts when reasons of economy come into play.

We have held that an officer who is retired under this section is not entitled to a hearing before the Civil Service Commission since there are no charges motivating the retirement. *Kusza v. Maximonis*, 363 Pa. 479, 70 A.2d 329 (1950). We have also affirmed the authority of a municipality to enact mandatory retirement legislation as a necessary detail of municipal administration and no appeal lies from such action. *In re Wallington's Appeal*, 390 Pa. 416, 135 A.2d 744 (1957). These cases stand for the proposition that municipalities must have the power to control the orderly and proper functioning of their retirement funds and to react in a responsible manner to economic developments because they and they alone are required to raise tax revenues to fund the programs which are determined to be necessary.

The question here presented is whether Appellee's involuntary retirement can be accomplished under this section without a hearing, and if so, whether this retirement can have an effect on his benefits under the Heart and Lung Act. As we have already recited, the Heart and Lung Act provides for continuing compensation during temporary disability for current members of the police force and the Borough Code provides for a non-reviewable involuntary retirement for economic reasons.

The Borough argues that since Appellee does not question that an economic hardship existed when he was retired and that he had the requisite seniority to be retired, he could be retired under Section 46190 without notice and with no right of appeal. The Borough also argues that the Heart and Lung Act benefits do not confer a property right which supercedes the Borough's right to regulate its police complement because of economic hardship. We agree.

The benefits conferred by the Heart and Lung Act do not guarantee lifetime employment. We have carefully reviewed the Heart and Lung Act and conclude that its

provisions do no more than assure uninterrupted compensation of salary for current members of a police force while a temporary incapacity exists to insure that injured police officers are treated equally with actively employed officers.

There is no indication that this Act confers any rights upon injured officers as to the terms of their employment or that the Act in any way removes the right to hire, fire, furlough or retire which is vested in the Borough under Section 46190. All that the Heart and Lung Act provides is that while an officer is a member of the police force his temporary incapacity status cannot be changed without a due process hearing. This is what *Callahan* stands for and we will not read it or the Act any broader, for to do so would grant greater rights to injured officers than to actively employed officers.

Since the Borough has the sole right under Section 46190 to regulate the size and membership of its police force because of economic constraints, it had the right to invoke this section and retire Appellee. That being the case, his retirement removed him from the group of employees covered by the Act. Since Appellee did not have a right to continued membership in the police force different than any other police officer employed by the Borough, there was no property right affected by his retirement. Accordingly, there was no adjudication which deprived him of a right for which a hearing was required. *In re Wallington*, 390 Pa. 416, 135 A.2d 744 (1957); *Kusza v. Maximonis*, 363 Pa. 479, 70 A.2d 329 (1950).

The Order of the Commonwealth Court is reversed and the Order of the Court of Common Pleas is reinstated.

LARSEN, J., files a concurring opinion.

LARSEN, Justice, concurring.

I join the majority opinion, especially in light of the fact that appellant, the Borough of Latrobe, and appellee, Joseph Camaione, Sr., entered into a stipulation that appellee was retired "[f]or reasons of economy, and the necessity to

reduce projected expenditures in order to balance the budget for the fiscal year ending December 31, 1981, ..."