580 A.2d 905

**Lisabeth MIHOK, Petitioner,**

**v.**

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 15, 1990.

Decided Sept. 25, 1990.

---

Saul Davis, Pittsburgh, for petitioner.

Jason W. Manne, Asst. Counsel, Pittsburgh, for respondent.

Before CRAIG, President Judge, SMITH, J., and NARICK, Senior Judge.

SMITH, Judge.

Before this Court is the petition for review filed by Lisabeth Mihok (Mihok) from the final order of the Secre-

tary of the Pennsylvania Department of Welfare (DPW) affirming DPW's termination of Mihok's disability benefits pursuant to the Act of December 8, 1959, P.L. 1718, *as amended*, 61 P.S. § 951 (Act 534). The final order of DPW is reversed in part and affirmed in part.

Mihok, a psychiatric aide at Woodville State Hospital, began receiving Act 534 disability benefits following injury to the toes of her right foot when a patient trod upon them in July, 1974.[1] Mihok underwent three operations on her toes in 1979, 1981, and 1984 and was placed on either disability leave or light work duty from the date of injury until July, 1984 when she returned to her regular position. On May 26, 1986, however, Mihok's right foot was reinjured while she attempted to restrain a patient, causing Mihok to go out on disability leave until August, 1986. Mihok returned to light duty at that time until January, 1988 when she resumed her regular duties. In March, 1988, Mihok was again placed on light duty; and on June 28, 1988, she called in sick for an indefinite period because of her claimed disability.

Pursuant to the hospital's request, Mihok was examined by Bruce Tetalman, M.D. on September 26 and October 7, 1988. Following his examination, Dr. Tetalman determined that Mihok had recovered from her work-related injury and was able to return to work as a psychiatric aide without restriction or limitation. Armed with this information, the director of personnel at the hospital held a "return to work

---

1. Act 534 provides in pertinent part:

> Any employe ... of a State mental hospital ... under the Department of Public Welfare, who is injured during the course of his employment by an act of ... any person confined in such institution ... shall be paid, by the Commonwealth of Pennsylvania, his full salary, until the disability arising therefrom no longer prevents his return as an employe of such ... institution at a salary equal to that earned by him at the time of his injury.
>
> All medical and hospital expenses incurred in connection with any such injury shall be paid by the Commonwealth of Pennsylvania until the disability arising from such injury no longer prevents his return as an employe of such ... institution at a salary equal to that earned by him at the time of his injury.

61 P.S. § 951.

conference" with Mihok on November 7, 1988 and ordered her to return to her regular duties. Referee's Adjudication, p. 3. Mihok did not return to work and exhausted all earned leave as of November 9, 1988. Effective November 10, 1988, Mihok was placed on leave without pay and her Act 534 benefits were terminated. Mihok appealed this action and a hearing was held before a referee who recommended that Mihok's appeal be denied. DPW's Office of Hearings and Appeals (OHA) entered an order adopting the recommendation of the referee in its entirety.

On appeal to this Court, Mihok raises the following issues: (1) Whether it was improper or unconstitutional for DPW to terminate Mihok's Act 534 disability benefits without a prior hearing; (2) Whether DPW proved that Mihok's work-related disability had ceased; and (3) Whether Mihok's Act 534 disability benefits should be retroactively restored. This Court's scope of review is to determine whether the appellant's constitutional rights were violated, an error of law was committed, or a necessary finding of fact is not supported by substantial evidence. *Murphy v. Department of Public Welfare*, 85 Pa.Commonwealth Ct. 23, 480 A.2d 382 (1984). An adjudication by DPW must be sustained if it is in accordance with the law and supported by substantial evidence. *D'Eletto v. Department of Public Welfare*, 76 Pa.Commonwealth Ct. 224, 463 A.2d 1214 (1983).

Mihok first argues that her due process rights were violated when her Act 534 disability benefits were terminated without a prior hearing. In *Hardiman v. Department of Public Welfare*, 121 Pa.Commonwealth Ct. 120, 550 A.2d 590 (1988), this Court, rejecting DPW's argument that a decision by the Workmen's Compensation Appeal Board favorable to a claimant is a prerequisite for an award of Act 534 disability benefits, inferred that either a termination or denial of Act 534 benefits without prior hearing and adjudication by DPW was improper: "By either description [termination or denial], DPW made an adjudication of the claimant's rights without a hearing. Accordingly, we shall remand this matter to DPW with instructions to provide

[the claimant] with a hearing and then to adjudicate his claim for Act 534 benefits." *Id.,* 121 Pa.Commonwealth Ct. at 134, 550 A.2d at 596.

The requirement that a claimant must be afforded a prior hearing before Act 534 disability benefits are terminated finds further and perhaps more concrete support in Pennsylvania Supreme Court decisions construing the Act of June 28, 1935, P.L. 477, *as amended,* 53 P.S. § 637 (Heart and Lung Act). In *Camaione v. Borough of Latrobe,* 523 Pa. 363, 567 A.2d 638 (1989), the Supreme Court held that once a claimant qualifies for benefits under the Heart and Lung Act, his disability status cannot be changed without a due process hearing. *See also Callahan v. Pennsylvania State Police,* 494 Pa. 461, 431 A.2d 946 (1981). This Court has recognized the similarities between Act 534 and the Heart and Lung Act and the appropriateness of adopting analyses of one for construction of the other. *See, e.g., Tuggle v. Department of Public Welfare,* 133 Pa.Commonwealth Ct. 227, 575 A.2d 664 (1990). Aside from the similarity of the language of the two acts,[2] the recognized legislative purposes behind Act 534 and the Heart and Lung Act share common considerations. With regard to the Heart and Lung Act, the Supreme Court has stated:

> When we have had occasion to review the provisions of the Heart and Lung Act, we have emphasized that this remedial legislation provides compensation for police who suffer temporary incapacity or disability in the performance of their work. The guarantee of *uninterrupted* income during periods of temporary disability has been cited as an attraction for service in the police force and one that assures a reasonably speedy return to full active duty.

**2.** Section 1 of the Heart and Lung Act, 53 P.S. § 637, reads in pertinent part:

> Any member of the State Police Force ... or any policeman, fireman, or park guard of any county, city, borough, town or township, who is injured in the performance of his duties ... and ... is temporarily incapacitated from performing his duties, shall be paid ... his full rate of salary ... until the disability arising therefrom has ceased.

*Camaione,* 523 Pa. at 366–367, 567 A.2d at 640 (emphasis added). With regard to Act 534, this Court has stated:

As for the overall intent of the legislature in enacting Act 534, this court has commented previously that 'Act 534 was designed to assure those who undertake employment in certain state institutions that they would be fully compensated in the event they were disabled as a result of an act of a patient.' (Citation omitted.) ... [W]e may conclude from the nature of the institutions covered by Act 534 (state mental hospitals and youth development centers) as well as from the nature of the institutions originally covered under Act 632 [the antecedent to Act 534] (state penal and correctional institutions) that the reason for providing such assurance was that the legislature regarded working in those places as being more dangerous than most other forms of state employment. By making assurances of *continued* payment of 'full salary' by the Commonwealth during periods of disability caused by the act of a patient or inmate—the source of the unique hazard associated with the work—the state can more readily attract employees to keep them in these essential but dangerous jobs.

*Hardiman,* 121 Pa.Commonwealth Ct. at 130–131, 550 A.2d at 595 (emphasis added). *Hardiman* thereupon drew a distinction between the different protections the legislature afforded workers in state institutions and those workers who in general suffer work-related injuries and who may be covered only by workers' compensation.[3]

Due process requires an opportunity to be heard at a meaningful time and in a meaningful manner. *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *East Rockhill Township v. Pennsylvania Public Utility Commission,* 115 Pa.Commonwealth Ct. 228, 540 A.2d 600 (1988). The Pennsylvania Supreme Court has determined in

---

**3.** A claimant under Act 534 may also collect benefits under The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1031, though Act 534 provides the Commonwealth with subrogation rights for workers' compensation benefits received by a claimant. 61 P.S. § 951; *Hardiman.*

*Callahan* and *Camaione* that a hearing—where each party has an opportunity to know of the claims of his opponent, hear evidence introduced against him, cross-examine witnesses, introduce evidence on his own behalf, and make argument—must be convened prior to a change in a claimant's disability status under the Heart and Lung Act. There is no reason to draw a distinction for those claimants collecting disability benefits under the similarly drawn and similarly purposed Act 534. Accordingly, DPW committed an error of law in terminating Mihok's Act 534 disability benefits without a prior due process hearing.[4] In order to arrive at a full resolution of the issues, however, this Court will address Mihok's remaining arguments before discussing the appropriate remedy for DPW's failure to provide a due process hearing prior to making the decision to terminate benefits.

Mihok next argues that at the hearing subsequently convened following the termination of her benefits, DPW failed to carry its burden of showing that her work-related injury had ceased or abated. Mihok further argues that the referee capriciously disregarded competent evidence in arriving at her findings. In making these arguments, however, Mihok has misconstrued this Court's standard of review. Where the party with the burden of proof (in this case, DPW) has prevailed below, this Court's scope of review is to determine whether constitutional rights were violated, an error of law was committed, or necessary findings of fact are not supported by substantial evidence. *Murphy.* This Court shall consider whether a hearing examiner capriciously disregarded competent evidence only when the burdened party failed below and was the only party to present evidence. *See Russell v. Workmen's Compensation Appeal Board (Volkswagen of America),* 121 Pa.Commonwealth Ct. 436, 550 A.2d 1364 (1988). Accord-

**4.** DPW argues that Mihok failed to establish a record in support of her contentions that DPW's procedures are constitutionally improper. The record is clear, however, that Mihok was not afforded a due process hearing, as required under *Callahan* and *Camaione,* until she appeared before the referee, following her termination of benefits.

ingly, this Court must determine whether DPW's finding that Mihok's disability has ceased is supported by substantial evidence.

At the hearing, DPW presented the testimony of Dr. Tetalman, a physician who examined Mihok and found no medical basis for her complaints. Dr. Tetalman also found a number of inconsistencies between Mihok's medical complaints and physical abilities and her performance on tests he administered to her. While Mihok introduced medical reports which indicated a continuing disability, the referee found Dr. Tetalman's testimony to be more persuasive. Further, the referee found Mihok's testimony concerning her own condition not to be credible.

Questions of credibility and the choice between conflicting testimony are for the hearing examiner, not this Court. *Feldbauer v. Department of Public Welfare*, 106 Pa.Commonwealth Ct. 87, 525 A.2d 837 (1987). The hearing examiner may therefore resolve conflicts in the evidence and choose to attach greater weight to certain evidence. If the evidence accepted constitutes substantial evidence, this Court is precluded from disturbing findings made, despite the existence of evidence to the contrary. *See American Refrigerator Equipment Co. v. Workmen's Compensation Appeal Board*, 31 Pa.Commonwealth Ct. 590, 377 A.2d 1007 (1977). "Substantial evidence" has long been defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Murphy.* In light of the above, it is clear that substantial evidence exists to support the referee's findings.

Because, however, Mihok was not afforded a due process hearing prior to the termination of her Act 534 benefits, her Act 534 disability benefits should be restored from the date of termination, November 10, 1988, to the date OHA entered its order disposing of Mihok's appeal following her hearing before the referee, November 7, 1989. *See Penn Window & Office Cleaning Co. v. Workmen's Compensation Appeal Board (Pearsall)*, 121 Pa.Common-

wealth Ct. 248, 550 A.2d 610 (1988), *appeal denied,* 522 Pa. 607, 562 A.2d 829 (1989) (workers' compensation benefits will be reinstated in absence of a valid supersedeas order terminating same).

## ORDER

AND NOW, this 25th day of September, 1990, for the reasons set forth in the attached opinion, the final order of the Secretary of the Pennsylvania Department of Public Welfare is hereby reversed in part and affirmed in part. Act 534 disability benefits shall be restored to Lisabeth Mihok for the period beginning on the date of their initial termination, November 10, 1988, to the date of the order of the Office of Hearings and Appeals addressing same, November 7, 1989. In all other respects, the final order of the Secretary is affirmed.