**SIEMON'S LAKEVIEW MANOR ESTATE, Petitioner,**

v.

**DEPARTMENT OF PUBLIC WELFARE, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Sept. 8, 1997.

Decided Nov. 5, 1997.

Jonathan P. Nase, Harrisburg, for petitioner.

James C. Conley, Asst. Counsel, Pittsburgh, for respondent.

Before SMITH and PELLEGRINI, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

The issues before us for review are the following: (1) whether the Secretary of the Department of Public Welfare (DPW) has the power to reverse factual findings of the Director of the Office of Hearings and Appeals (OHA) in a provider appeal; and (2) if so, whether the Secretary improperly disallowed horse and buggy costs, interest costs and salary costs.

Siemon's Lakeview Manor Estate (Siemon's) appeals from an order of the Secretary of DPW that denied reimbursement of certain costs associated with nursing care services under Pennsylvania's Medical Assistance (MA) Program, Section 443.1 of the Public Welfare Code.[1] We affirm.

Siemon's is a family owned and operated nursing facility in Somerset County that provides nursing care to MA recipients.[2] DPW administers the MA program, which provides reimbursement of costs for nursing care services provided to MA recipients. During the fiscal year ending June 30, 1990, DPW still used a retrospective method of cost reimbursement that required Siemon's to submit a cost report to DPW.[3] After Siemon's submitted its cost report, DPW audited the report and adjusted certain costs. The adjusted costs included: (1) the disallowance of $10,733 of costs related to the maintenance of a horse and buggy; (2) the disallowance of $2,962 in interest payments on a loan; and (3) the reduction of a portion of the salaries paid to the three owners/employees of Siemon's.[4] Siemon's appealed to OHA.

A hearing was held before an attorney examiner, but the appeal was then transferred to a different attorney examiner who recommended that Siemon's appeal be sustained. The Director of OHA (Director) adopted the recommendation of the attorney examiner in its entirety and sustained Siemon's appeal. DPW then requested reconsideration by the Secretary. The Secretary granted the request, set aside the Director's order and denied Siemon's appeal.

On appeal, Siemon's contended that the Secretary failed to adequately explain her reasoning, committed errors of law in applying the burden of proof and that her findings were not supported by substantial evidence. In response, we relinquished jurisdiction and remanded the case to the Secretary so that she could provide an opinion explaining her decision. The Secretary issued her opinion, which stated that the Secretary is the ultimate finder of fact under *G.S. v. Department of Public Welfare*, 104 Pa.Cmwlth. 84, 521 A.2d 87 (1987). The Secretary's opinion further explained that she upheld the disallowance of the horse and buggy costs because she found the infrequent use as shown in the calendar logs more credible than the testimony of Siemon family members. As to the interest costs and salary costs, the Secretary held that Siemon's failed to meet its burden

---

1. Act of June 13, 1967, P.L. 31, *as amended*, added by Section 5 of the Act of July 31, 1968, P.L. 904, *as amended*, 62 P.S. § 443.1.

2. Approximately 86 percent of Siemon's is owned by three Siemon family members: Martin Siemon III, Martin Siemon, Jr. and Jan Hogan. These three individuals are also salaried employees of the nursing facility. (R.R. at 116a).

3. Effective January 1, 1996, DPW changed its method of reimbursing nursing home providers to a prospective case-mix payment system. 55 Pa.Code § 1187.

4. The salary of Martin Siemon III, Administrator, was reduced from $72,135 to $45,000. The salary of Martin Siemon, Jr., Secretary–Treasurer, was reduced from $27,339 to $22,100. Lastly, Jan Hogan's salary as Social Service Director was reduced from $35,799 to $26,250.

of proving that these expenses were allowable. Siemon's appealed.

On appeal, Siemon's contends that the Secretary of DPW does not have the authority to reverse the Director of OHA on factual issues. Siemon's asserts that the attorney examiner is in the best position to judge the credibility and demeanor of witnesses and to review the evidence. However, Siemon's admits that under the General Rules of Administrative Practice and Procedure, 1 Pa.Code §§ 35.1–35.251, the attorney examiner is designated by the agency head as a presiding officer with the limited authority to issue proposals and make recommendations. As a result, Siemon's concedes that the Director is the finder of fact in MA provider appeals. Although the Director is not in a position to see the witnesses and assess credibility, Siemon's argues that the Director still has more time to review the record and the examiner's recommendations than the Secretary, who is a cabinet-level official with busy policy-making duties. Thus, Siemon's requests that we limit the Secretary's fact-finding authority. We decline the request and today answer the question we left open in *Northwestern Institute of Psychiatry v. Department of Public Welfare,* 99 Pa. Cmwlth. 213, 513 A.2d 495 (1986.)[5]

In *Northwestern,* an *en banc* panel of this court held that the Director, not the attorney examiner, is the finder of fact in a provider appeal. In support of our holding, we reviewed the General Rules of Administrative Practice and Procedure, 1 Pa.Code §§ 35.1–35.251, which govern the practice and procedures of an administrative agency where the agency has not adopted its own regulations on the subject. *Department of Public Welfare v. Overlook Medical Clinic, Inc.,* 518 Pa. 507, 544 A.2d 935 (1988). We presumed that the Director is a duly authorized agent of the Secretary under Section 206 of the Administrative Code of 1929, Act of April 9, 1929,

P.L. 177, *as amended,* 71 P.S. § 66. Section 206 provides in pertinent part:

> Each administrative department shall have as its head an officer who shall, either **personally, by deputy, or by duly authorized agent** or employe of the department, and subject at all times to the provisions of this act, exercise the powers and perform the duties by law vested in and imposed upon the department.
>
> The following officers shall be the heads of the administrative departments following their respective titles:
>
> . . . .
>
> Secretary of Public Welfare, of the Department of Public Welfare;

71 P.S. § 66 (emphasis added). Based on that presumption, we determined that under 35 Pa.Code § 35.123 and § 35.185 the Director as agency head can hold hearings or designate that duty to a "presiding officer." *Northwestern.* We further stated that 1 Pa. Code § 35.202 and § 35.205 permit the Director as agency head to order the presiding officer to prepare a proposed report containing findings of fact and conclusions of law. Moreover, the regulations did not contain any language establishing the attorney examiner as the fact finder. Therefore, we concluded that the Director was the fact finder in provider appeals.

Nonetheless, in *Northwestern* we did not address whether the Secretary has the power to reverse a factual finding of the Director of OHA in a proceeding conducted pursuant to Chapter 35 of 1 Pa.Code. Rather, we specifically left that question unanswered because we determined that the Secretary's decision in *Northwestern* reversed a legal conclusion rather than a factual finding. Thus, we limited our analysis to whether the Secretary committed an error of law. DPW claims the question we left unanswered in *Northwestern* has been answered, in effect, by our reasoning in *Northwestern* and our

---

**5.** Siemon's claims the Secretary recognized that her position limits her time to carefully consider factual issues when she promulgated the regulations governing appeals by MA applicants. Specifically, under 55 Pa.Code § 275.4(h)(4), the Secretary's review of decisions upon reconsideration is explicitly confined to matters of law and departmental policy. Based on such a regulato-

ry scheme, Siemon's argues that the Secretary should perform the same role in MA provider appeals in order to maintain uniformity. However, in *Northwestern* we stated that Chapter 275 of 55 Pa.Code only applied to the hearing rights of welfare recipients and applicants for public assistance, and not to the hearing rights of providers.

subsequent decision in *G.S. v. Department of Public Welfare*, 104 Pa.Cmwlth. 84, 521 A.2d 87 (1987). We agree.

Under Section 206 of the Administrative Code of 1929, 77 P.S. § 66, the Secretary of DPW shall "personally" or through a "duly authorized agent" exercise her·powers to carry out the duties imposed upon DPW. Because the Secretary's powers are not specifically set forth in the regulations, we must look to the General Rules of Administrative Practice and Procedure. As we discussed in *Northwestern*, the regulations refer to the "agency head" as the party who can hold hearings, 1 Pa.Code § 35.123, or appoint a presiding officer to conduct hearings, 1 Pa. Code § 35.185. Under 1 Pa.Code § 31.3, an "agency head" is explicitly defined as "the secretary of a department." Based on that language, the Secretary of DPW is clearly an "agency head." In *Northwestern*, we referred to the Director as "agency head," which then allowed us to apply the regulations and hold that the Director can designate an attorney examiner and act as the ultimate fact finder in provider appeals. Thus, if the Director as "delegatee agency head" can act as the ultimate fact finder in provider appeals, then we must find that the actual "agency head" also possesses fact-finding power.

Although the Director and the Secretary are not in a position to assess the behavior and demeanor of the witnesses who testify before the attorney examiner, we recognized in *G.S.* that a statutory scheme where the Secretary or his designee is vested with final fact-finding authority is not unusual in Pennsylvania.[6] Also, DPW asserts that neither the Director, the Secretary or the attorney examiner who made the recommendation in this case was in any better position to function as the fact finder here because the evidence was heard by another attorney examiner. None of the three individuals who reviewed the facts in the instant case saw or heard the testimony of the witnesses. Therefore, Siemon's attempt to maintain a distinction between the fact-finding authority of the Secretary, who appoints the Director to act on her behalf, and the Director in provider appeals is a distinction that we must reject in light of the administrative scheme established by our General Assembly.

Siemon's further argues that *G.S.* does not apply to the instant case because our decision in that case relied on the explicit language contained in Section 15(d) of the Child Protective Services Law (Law).[7] We agree that *G.S.* relied specifically on a statutory provision that gave the Secretary or his designated agent the power to make factual findings and to expunge "indicated" reports of child abuse. However, we also looked to Part II of 1 Pa.Code, which includes Chapter 35, to support our holding in *G.S.* Thus, we at least recognized in *G.S.* that Chapter 35 of the General Rules of Administrative Practice and Procedure supported the notion that the Secretary of DPW has the authority to make findings of fact in situations other than child expungement cases. Today, we hold that Chapter 35 permits the Secretary to act in a fact-finding capacity in provider appeals.

Before we review the decision of the Secretary in this case, we must first determine our proper standard of review. Where both parties present evidence before an administrative tribunal, our review is limited to a determination of whether constitutional rights were violated, an error of law was committed, or whether necessary findings of fact are supported by substantial evidence. *England v. Department of Transportation*, 687 A.2d 425 (Pa.Cmwlth.1997). However, where the party with the burden of proof is the only party to present evidence

6. *G.S.*, 521 A.2d at 89 (citing *Peak v. Unemployment Compensation Board of Review*, 509 Pa. 267, 501 A.2d 1383 (1985) and *Rehab Hospital Services Corp. v. Health Systems Agency of Southwestern Pennsylvania*, 82 Pa.Cmwlth. 147, 475 A.2d 883 (1984)).

7. Act of November 26, 1975, P.L. 438, *as amended, formerly* 11 P.S. § 2215(d), repealed by the Act of December 19, 1990, P.L. 1240. A similar provision is now found in Section 6341 of the Child Protective Services Law, 23 Pa.C.S. § 6341. In *R. v. Department of Public Welfare*, 535 Pa. 440, 636 A.2d 142 (1994), the Pennsylvania Supreme Court recognized that Section 6341 authorized the Secretary to appoint a designee to perform her statutorily mandated duties to find facts and decide whether to expunge an indicated report of child abuse.

before the administrative tribunal and fails to prevail, our standard of review is whether the tribunal capriciously disregarded competent evidence. *Wanamaker v. Pennsylvania Liquor Control Board,* 148 Pa.Cmwlth. 541, 611 A.2d 1368 (1992). The capricious disregard of competent evidence is the wilful, deliberate disbelief of an apparently trustworthy witness, whose testimony one has no basis to challenge. *Acme Markets, Inc. v. Workmen's Compensation Appeal Board (Pilvalis),* 142 Pa.Cmwlth. 400, 597 A.2d 294 (1991). In *Wanamaker,* we cited to numerous decisions, including *Mihok v. Department of Public Welfare,* 135 Pa.Cmwlth. 265, 580 A.2d 905 (1990),[8] where we applied the capricious disregard standard. Thus, because Siemon's was the only party to present evidence and failed to prevail below, we must determine whether the Secretary capriciously disregarded the evidence.

■ Initially, Siemon's argues that the Secretary erred by failing to support her decision with sufficient findings of fact and conclusions of law. In *Gerber v. Department of Public Welfare,* 133 Pa.Cmwlth. 639, 577 A.2d 948, 950 (1990), we stated that the "absence of specific findings of fact is not necessarily fatal to an administrative proceeding." The findings of an administrative agency need only be enough to enable a reviewing court to decide the issues and ensure that the conclusions follow from the facts. *Krebs Chrysler–Plymouth, Inc. v. State Board of Vehicle Manufacturers, Dealers and Salespersons,* 655 A.2d 190 (Pa. Cmwlth.1995). Although the Secretary's opinion issued in support of her decision is brief and contains little detail, we find that it is adequate for purposes of our appellate review of the instant case.

■ Siemon's contends that the Secretary erroneously found that the testimony of Siemon family members conflicted with Siemon's documentary evidence as to the allowance of the horse and buggy costs. Siemon's introduced charts, plans of care for residents, activity calendars, and pictures to support its claim for the horse and buggy costs. The documents showed that the horse and buggy were used for patient rides on six separate occasions in 1990. The Administrator for Siemon's, Martin Siemon III, also testified that the horse and buggy were used for patient rides three times per month for eight months of the year. However, on cross-examination Mr. Siemon stated that sometimes Siemon's used the horse and buggy without charting the rides. The Secretary found that Mr. Siemon's testimony was not credible in light of the conflicting documentary evidence and Mr. Siemon's interest in the case. As the fact finder in this case, the Secretary was free to judge the credibility of Mr. Siemon and to reject testimony that she found contradictory and biased. Thus, the Secretary did not capriciously disregard the evidence.

■ Siemon's next argues that the Secretary incorrectly determined that Siemon's failed to meet its burden of proof to show that claimed interest costs and salary costs were allowable. Unlike the Secretary's resolution of the horse and buggy costs, her decision on whether to allow the interest and salary costs does not turn on a conflict in the evidence. Rather, we are faced with the question of whether the Secretary erred in finding that Siemon's failed to present sufficient evidence to meet its burden of proof. In her decision, the Secretary correctly stated that the provider has the burden of proving that the auditor's adjustment was incorrect. *Grandview Health Homes, Inc. v. Department of Public Welfare,* 122 Pa.Cmwlth. 356, 552 A.2d 720 (1988). The Secretary also looked to *Haygood v. Civil Service Commission,* 133 Pa.Cmwlth. 517, 576 A.2d 1184 (1990) and stated that once the provider has presented sufficient evidence to make a prima facie claim, then the burden becomes irrelevant and the fact finder must base the decision upon the weight of the evidence. Based on these standards, Siemon's asserts that it made out a prima facie case and that the weight of the evidence was clearly in its favor.

---

**8.** Although we were required to apply the substantial evidence standard in *Mihok* because both parties presented evidence before the DPW hearing examiner, we recognized that under the proper circumstances the capricious disregard standard must be applied to decisions of DPW.

■ However, we find that our decision in *Kirkwood v. Unemployment Compensation Board of Review*, 106 Pa.Cmwlth. 92, 525 A.2d 841 (1987) contains a more accurate statement of the burden of proof to be applied in this case. In *Kirkwood*, we stated that in order to prevail "the burdened party must meet both his burden of production (i.e., present sufficient evidence) and his burden of persuasion (i.e., present credible evidence)." *Id.* 525 A.2d at 844. Our decision in *Haygood* provides that once the burdened party makes a prima facie case, the burden becomes irrelevant and the fact finder must weight the evidence. Although *Kirkwood* seems to set forth a different burden of proof, we find that *Haygood* essentially sets forth the same burden of proof but uses different language.[9] Accordingly, the Secretary's reliance on *Haygood* does not alter the requirement that the burdened party meet both the burden of production and the burden of persuasion.

■ If the burdened party in a proceeding fails to present sufficient evidence, he has failed to meet his burden as a matter of law. *Kirkwood.* When such a situation is present and the burdened party did not prevail before the administrative agency, our role is simply to affirm what was a correct legal conclusion. *Id.* The question is whether the Secretary correctly determined that Siemon's failed to present sufficient evidence to meet its burden of proof. In analyzing the remaining issues, we must also keep in mind that DPW is the administrative agency charged with carrying out the MA Program. Hence, DPW's determination of what constitutes a reimbursable expense is given controlling weight unless plainly erroneous or inconsistent with the regulations or underlying statute. *Harston Hall Nursing and Convalescent Home, Inc. v. Department of Public Welfare*, 99 Pa.Cmwlth. 475, 513 A.2d 1097 (1986).

■ Siemon's claims that the $2,962 in interest costs was "non-capital" interest that should have been allowed by the auditors. However, DPW points out that Siemon's had the burden to show that the auditors improperly treated the interest reported as "Other interest" on line 31 of the cost report as capital interest. We agree. Under 55 Pa.Code § 1181.260(e), the amount of reimbursable capital interest is capped at a rate that may not exceed the amount that a "prudent borrower" would pay, and in no event can such amount exceed the prime interest rate. Siemon's had to show that the capital interest claimed did not exceed the capped amount or that the interest was on loan proceeds that were not used for capital expenses. In support of its argument, Siemon's relies on the auditor's failure to reclassify the disallowed interest as is normally done and its accountant's testimony that the interest reported on line 31 was for a line of credit from a local bank that is not capital indebtedness. Although Siemon's evidence explains how the interest costs were reported, such evidence does not explain how the loan proceeds were used. As a result, Siemon's did not meet its burden.

■ Finally, Siemon's argues that the Secretary erred in finding that Siemon's failed to meet its burden of proof as to the allowance of salary costs. The controlling regulation is 55 Pa.Code § 1181.241(f), which provides as follows:

> The cost of customary compensation and fringe benefits for employes performing necessary duties in general facilities, ..., will be based on an average of the cost of compensation and fringe benefits of employes performing the same work in enrolled general facilities, ..., which are located in the county in which the facility is located and in the counties within this Commonwealth which are contiguous to that county.

The auditor's work sheets show that the auditor calculated an average salary by select-

---

9. In setting forth the burden of proof in *Haygood*, we looked to the Pennsylvania Supreme Court's decision in *Morrissey v. Department of Highways*, 424 Pa. 87, 225 A.2d 895 (1967). In *Morrissey*, the Supreme Court stated that the " 'burden of proof' and the 'weight of the evidence' are not one and the same; the former remains on the party upon whom is imposed the duty of produc-

ing a certain amount of evidence in order that he may not lose summarily while the latter involves the credibility of persuasive quality of the evidence produced...." *Id.* at 92, 225 A.2d at 898. Based on the language of *Morrissey*, it is clear that the court in *Haygood* was referring to the same burdens of production and persuasion set forth in *Kirkwood*.

ing a sample of two homes from Somerset County and a sample of two homes from each of the contiguous counties. The average was then adjusted to account for the number of beds in each facility. Because DPW's determination of an average salary is entitled to a presumption of validity, Siemon's had the burden to show that such calculations were plainly erroneous or inconsistent with the regulations. Although Siemon's introduced documents to show that the salaries fell within a range of salaries paid to persons performing similar duties in facilities within the same area, the auditor was not required to base his or her calculations on a range of salaries. Rather, the auditor was required to base the salaries on an "average." Siemon's admitted that it made no attempt to calculate an average to show that the auditor's calculations were erroneous. Therefore, we conclude that the Secretary did not err by disallowing the salary costs.[10]

Accordingly, we affirm the decision of the Secretary of DPW.

## ORDER

AND NOW, this 5th day of November, 1997, the order of the Secretary of the Department of Public Welfare in the above-captioned case is hereby affirmed.

10. Siemon's also raised an issue concerning costs of a cellular telephone and beepers, but DPW did not challenge the allowance of these costs in its request for reconsideration. Thus, these costs are not at issue on appeal.