**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1128
_____

JOHN P. DONDERO,
Appellant

v.

LOWER MILFORD TOWNSHIP; ELLEN KOPLIN, IN
HER INDIVIDUAL CAPACITY; DONNA L. WRIGHT, IN
HER INDIVIDUAL CAPACITY; MICHAEL W.
SNOVITCH, IN HIS INDIVIDUAL CAPACITY; JOHN
QUIGLEY, IN HIS INDIVIDUAL CAPACITY
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 5-17-cv-04370)
District Judge: Honorable Joseph F. Leeson, Jr.
_____

Submitted on June 4, 2021

Before: AMBRO, HARDIMAN, and PHIPPS, *Circuit Judges*

(Filed: July 20, 2021)

Fredrick E. Charles
441 West Linden Street
Allentown, PA 18102
        *Counsel for Appellant*

Harry T. Coleman
41 North Main Street
Suite 316
Carbondale, PA 18407
        *Counsel for Appellees*

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge.*

John Dondero appeals a summary judgment rejecting his constitutional and statutory claims arising out of his termination as Chief of Police in Lower Milford Township without a hearing. We agree with the District Court that no pre-termination hearing was required when the Township eliminated its police department. And because Dondero's other claims lack merit, we will affirm.

I

Dondero served as the Lower Milford Township Chief of Police from 2006 until the Township eliminated the department in 2016. As Chief, Dondero reported directly to Township Manager Ellen Koplin. The Board of Supervisors, including Koplin, manage the Township's operations. Dondero's relationship with the Supervisors was rocky. He

often publicly disagreed with them about the Township's safety policies and practices. In 2013, he openly supported, and campaigned for, a challenger to one of the Supervisors.

While on duty in June 2015, Dondero suffered temporary but "serious and debilitating injuries" from entering a burning building in response to a fire call. Dondero Br. 6. At the time of his injury, Dondero was the only active member of the police department. While incapacitated, Dondero received disability benefits under Pennsylvania's Heart and Lung Act (HLA). But he fell out of touch with his boss, Koplin, going more than two months without contacting her. In early 2016, Koplin sent Dondero a letter requesting updated medical documents to verify his continued qualification for HLA benefits.

A few weeks later, citing financial concerns, the Supervisors passed a resolution to disband the Township police department. In March 2016, the Supervisors enacted Ordinance No. 128, officially eliminating the department. From the time of Dondero's work-related injury through the elimination of the Township police department—a period of more than nine months—the Pennsylvania State Police provided Township residents full-time police coverage at no extra cost to the Township taxpayers.

In April 2019, after several earlier filings and modifications, Dondero filed his Second Amended Complaint. He alleged retaliation in violation of the First Amendment and violations of substantive and procedural due process. He also claimed an unlawful conspiracy under 42 U.S.C. §§ 1983 and 1985, municipal liability based on discriminatory Township policies, and a violation of the Pennsylvania state constitution. The District Court granted summary judgment for the

Township on all counts. Dondero timely appealed the federal claims.

## II

The District Court exercised jurisdiction under 28 U.S.C. §§ 1331, 1343, and 1367. We have jurisdiction under 28 U.S.C. § 1291. We review the District Court's summary judgment de novo. *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016).

## III

## A

We begin with Dondero's procedural due process arguments. Dondero claims the Township had to conduct a hearing before dissolving the police department and terminating his HLA benefits. He also claims entitlement to a hearing to clear his name. We analyze each argument in turn.

## 1

Dondero contends he was entitled to a hearing before the Township eliminated the police department and terminated his employment. The Due Process Clause's procedural protections apply when a person is deprived of a property interest protected by state law. *See Bd. of Regents of State Coll. v. Roth*, 408 U.S. 564, 569, 577 (1972).

Dondero correctly argues he had a property interest in his continued employment as a police officer. When public employees may be discharged only for cause, they have a property interest in their jobs. *Gilbert v. Homar*, 520 U.S. 924, 928–29 (1997) ("[P]ublic employees who can be discharged

4

only for cause have a constitutionally protected property interest in their tenure and cannot be fired without due process."); *accord Bishop v. Wood*, 426 U.S. 341, 345 n.8 (1976). In Pennsylvania, regular, full-time police officers can be "suspended, removed, or reduced in rank" only for an enumerated list of reasons. *See* 53 PA. STAT. AND CONS. STAT. § 812. So Dondero had a property interest in his employment.

So what process was Dondero due? Property interests and process usually go hand-in-hand—typically in the form of a pre-termination hearing. *See Roth*, 408 U.S. at 569–70 & n.7. But as the Court of Appeals for the First Circuit has recognized, "a limited 'reorganization exception' to due process" exists "that eliminates the need for a hearing where a reorganization or other cost-cutting measure results in the dismissal of an employee." *Whalen v. Mass. Trial Ct.*, 397 F.3d 19, 24 (1st Cir. 2005). Several other courts have held likewise. *See, e.g.*, *Misek v. City of Chicago*, 783 F.2d 98, 100 (7th Cir. 1986); *Dwyer v. Regan*, 777 F.2d 825, 833 (2d Cir. 1985), *modified* 793 F.2d 457, 457 (2d Cir. 1986); *see also Hartman v. City of Providence*, 636 F. Supp. 1395, 1410 (D.R.I. 1986) (collecting cases); *Perkiomen Twp. v. Mest*, 522 A.2d 516, 519–20 (Pa. 1987) (recognizing the reorganization exception in Pennsylvania); *cf. Mandel v. Allen*, 81 F.3d 478, 482 (4th Cir. 1996) (rejecting the argument "that once a state position is created, it is unconstitutional to subsequently alter or abolish that position without an individualized hearing").

We agree with those courts and hold that the Due Process Clause does not require a pre-termination hearing in a case that involves a legitimate government reorganization. This exception makes sense because when governments reorganize in good faith, their decisions concern positions—not individuals. That change in focus puts the office-holder in

the same shoes as any other citizen, so "the hearing[s] contemplated by the Supreme Court's due process precedent lose[ their] relevance." *Whalen*, 397 F.3d at 25. In reorganization cases, there are no charges against the employee, and there is no reason to hold an individual hearing for a matter of public concern. *See Kusza v. Maximonis*, 70 A.2d 329, 331 (Pa. 1950); *see also Digiacinto v. Harford Cnty.*, 818 F. Supp. 903, 906 (D. Md. 1993) ("[I]f an employee is losing her job not because of allegedly deficient performance but for extraneous reasons relating to fiscal and operational concerns, a hearing regarding the quality of the employee's performance would serve no useful purpose.").

But this exception is not absolute. A government may not "cry 'reorganization' in order to circumvent the constitutional and statutory protections guaranteed" to its employees. *Misek*, 783 F.2d at 101. In Pennsylvania, for example, courts have explained the exception does not apply when "the abolition was a mere pretense or subterfuge." *Perkiomen*, 522 A.2d at 520. "The pretense or subterfuge must have been designed to evade a court order, or be evidenced by the recreation of substantially the same job under a different name or title." *Id.*; *see also Carey v. City of Altoona*, 16 A.2d 1, 2 (Pa. 1940); *Misek*, 783 F.2d at 101 (recognizing similar exceptions).

Dondero claims just that, arguing that the Township's reorganization was merely a subterfuge to retaliate against him. We agree with the District Court that the record does not support that claim. Although Dondero argues the elimination of the department was an "effort to circumvent and 'hedge' against an anticipated Court Order," Dondero Br. 50, no such order exists, nor are there pending matters in another court related to Dondero's rights as a public employee. Just as a

6

government cannot "cry 'reorganization,'" to avoid a hearing, *see Misek*, 783 F.2d at 101, a plaintiff cannot overcome the reorganization exception by assuming some "potential future order." And because Dondero does not suggest the Township substantially recreated his job under a different name or title, that alternative path to show pretense or subterfuge is also closed.

In sum, the police department was eliminated through a valid government reorganization. And because Dondero cannot show the reorganization was illegitimate, he was not entitled to a pre-termination due process hearing.

2

Dondero next claims a due process violation when the Township deprived him of disability payments under the HLA without a hearing. Looking once more to state law, *see Roth*, 408 U.S. at 577, Pennsylvania courts have recognized that police officers injured on the job have "a constitutionally protected property right in [their HLA] benefits." *Adams v. Lawrence Twp. Bd. of Supervisors*, 621 A.2d 1119, 1120 (Pa. Commw. Ct. 1993). That right exists so long as the officer remains a member of the department. *See Camaione v. Borough of Latrobe*, 567 A.2d 638, 640 (Pa. 1989).

In *Camaione*, the Pennsylvania Supreme Court addressed whether a locality could involuntarily retire a police officer (and terminate his HLA benefits) for economic reasons without first providing the officer a hearing. The Court said yes, noting the HLA did not "confer[] any rights upon injured officers as to the terms of their employment." *Id.* at 641. The Act, the Court explained, does "no more than assure uninterrupted compensation of salary for *current* members of

7

a police force while a temporary incapacity exists." *Id.* (emphasis added). Although it guaranteed that "while an officer is a member of the police force his temporary incapacity status cannot be changed without a due process hearing," the HLA did not remove the Township's "right to hire, fire, furlough or retire" its officers. *Id.* at 640–41. In essence, when an officer is fired, furloughed, or retired, no hearing is needed. *Id.*

Dondero, like the officer in *Camaione*, was not entitled to a hearing before termination of his HLA benefits because his position was eliminated by the Township for economic reasons. In effect, Dondero was "removed . . . from the group of employees covered by the Act." *Id.* The Township did not alter his incapacity status. Instead, it exercised its legitimate power of reorganization. *See id.* ("All that the [HLA] provides is that while an officer is a member of the police force his temporary incapacity status cannot be changed without a due process hearing.").

3

Finally, Dondero contends the Township "deprived him of his constitutionally protected liberty interest in his good name" when it spread "false and defamatory" statements about him and denied him a name-clearing hearing. Dondero Br. 51, 53. "[T]o make out a due process claim for deprivation of a liberty interest in reputation, [Dondero] must show a stigma to his reputation *plus* deprivation of some additional right or interest." *Hill v. Borough of Kutztown*, 455 F.3d 225, 236 (3d Cir. 2006); *see also id.* ("We have referred to this as the 'stigma-plus' test."). "To satisfy the 'stigma' prong . . . the purportedly stigmatizing statement(s)" must be "public[]" and "false." *Id.* Dondero fails both prongs.

8

Dondero offers two sets of statements he claims were stigmatizing. First, he points to a 2013 "extremely negative and stigmatizing professional performance review." Dondero Br. 53. Dondero offers no evidence suggesting the poor marks he received were false or that the Township made them publicly. Even if the review were conducted with retaliatory motives, those motives would be irrelevant to the name-clearing analysis. Name-clearing hearings require proof of publicity and falsity. *See Hill*, 455 F.3d 235–36. Without those elements, the performance review fails the "stigma-plus" test.

Dondero also claims the Township publicized "false criminal accusations" that he violated the Pennsylvania HLA and "false and defamatory accusations of his malingering" after his June 2015 work injury. Dondero Br. 53. As evidence, Dondero cites an "inference" from letters he received from Koplin; specifically, a letter sent in January 2016. Dist. Ct. Dkt. No. 47-1, at 135:21–137:11; *Dondero*, 431 F. Supp. 3d at 597. But he offers an unreasonable reading of the letter. Koplin requested updated "medical documentation" about whether Dondero might be "able to return to full duty at present and, if not," when his return could be expected. Dist. Ct. Dkt. No. 58-7. There is no inference, much less an accusation, of criminal activity. Because the letter contains no falsehood, it also fails the "stigma" test.

The statements Dondero cites cannot satisfy the "stigma-plus" test. So we agree with the District Court that a name-clearing hearing was not required because Dondero was not denied any liberty interest in his reputation.

9

B

We turn now to Dondero's First Amendment retaliation claims. According to Dondero, the Township eliminated the police department in retaliation for exercising his First Amendment rights. To succeed on a First Amendment retaliation claim, Dondero must show his activity was (1) protected conduct under the First Amendment that (2) was a substantial and motivating factor in the alleged retaliatory action. *Munroe v. Cent. Bucks Sch. Dist.*, 805 F.3d 454, 466 (3d Cir. 2015) (quoting *Dougherty v. Sch. Dist. of Phila.*, 772 F.3d 979, 986 (3d Cir. 2014)). If Dondero shows both, the burden shifts to the Township to prove it would have taken the same action regardless of the protected conduct. *Id.*

Dondero offers a litany of activities he undertook while Chief of Police as evidence of protected conduct. He opposed the police department's downsizing and he supported unionizing. He accused Koplin of falsifying insurance documents and he spoke on her alleged tardiness and unexplained absences. Finally, he commented on a medical drop box and criticized the Township's safety policies. Dondero also engaged in political activity.

Assuming the First Amendment protects all those activities, Dondero's retaliation claim still fails. To succeed, Dondero must show causation—he must establish the activities were substantial and motivating factors in his termination. *See Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) ("[I]f there was not a causal relationship then the [Township] could not have engaged in its conduct in retaliation for [Dondero] having engaged in a protected activity."). Our cases offer three avenues to establish causation. But Dondero satisfies none of them.

First, "an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action" can establish causation. *Id.* Dondero's most recent protected activity—speech about Koplin's tardiness and unexplained absences—took place from July to October 2015. His position was eliminated in March 2016. Although "there is no bright-line rule for the time that may pass between protected speech and what constitutes actionable retaliation," *Conard v. Pa. State Police*, 902 F.3d 178, 183 (3d Cir. 2018), a five-month gap is not "an unusually suggestive temporal proximity," *DeFlaminis*, 480 F.3d at 267. *Compare Est. of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003) (explaining two days is proximate enough), *with id.* (19 months is not), *and Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003) (under the comparable Title VII framework, three weeks was not proximate enough). The rest of Dondero's protected activities took place at least a year before his firing, so their timeframes are not unusually suggestive.

Second, "a pattern of antagonism coupled with timing" may establish a causal link. *DeFlaminis*, 480 F.3d at 267. Dondero offers several Township actions he claims show a pattern of antagonism: (1) attempts in 2013 and 2015 to eliminate the police chief position; (2) the January 2015 cancellation of Dondero's Township-provided cell phone plan; (3) an April 2015 "counseling" memorandum that was allegedly distributed throughout the community; and (4) Koplin's opening of mail addressed to the Chief of Police while Dondero was on medical leave. Even assuming evidence existed to prove the Township took each of the alleged actions, they do not amount to a pattern of antagonism. Cost-reduction efforts, a disciplinary notice spawned by a public employee's perceived shortcomings, and the reading of potentially time-

11

sensitive safety communications while the only safety officer was on medical leave speak to the Township's attempts to govern itself responsibly. They do not show a pattern of antagonism.

Finally, the record as a whole may reveal evidence implying causation. *DeFlaminis*, 480 F.3d at 267. Although Dondero makes passing reference to the "record as a whole," Dondero Br. 41, the dearth of evidence he offers does not imply causation. So we agree with the District Court: Dondero's First Amendment retaliation claims are unpersuasive.[1]

\*     \*     \*

The District Court did not err when it granted summary judgment to the municipal employers. Although Dondero

---

[1] Dondero also advances substantive due process, conspiracy, and *Monell* claims. "[F]or a property interest to be protected for purposes of *substantive due process*, it must be 'fundamental' under the United States Constitution." *Hill*, 455 F.3d at 234 n.12. But public employment is not a fundamental right. *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 142–43 (3d Cir. 2000). The conspiracy and *Monell* claims fail because of the lack of a legal harm. *See In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 789 (3d Cir. 1999) ("[A]ctionable civil conspiracy must be based on an existing independent wrong . . . that would constitute a valid cause of action if committed by one actor." (quoting *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1218 (11th Cir. 1999))); *Brown v. Pa. Dep't of Health Emergency Med. Servs. Training Inst.*, 318 F.3d 473, 482 (3d Cir. 2003) ("[F]or there to be municipal liability, there still must be a violation of the plaintiff's constitutional rights.").

possessed a property interest in continued employment and in HLA benefits while he was a police officer, under the governmental reorganization exception, due process did not require a pre-termination hearing. We will affirm.