IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Miriam Cruz, | : | |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 418 C.D. 2023 |
| | : | Argued: September 9, 2024 |
| Department of Human Services, | : | |
| | : | |
| Respondent | : | |

BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE CHRISTINE FIZZANO CANNON, Judge
                HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WOJCIK                                FILED: December 18, 2024

Miriam Cruz (Patient) petitions for review of the Final Administrative Action Order (Order) of the Department of Human Services (DHS), Bureau of Hearings and Appeals (BHA), affirming the Adjudication of a DHS Administrative Law Judge (ALJ). The Adjudication denied Patient's appeal of the grievance decision by UPMC Community HealthChoices (UPMC), a Community HealthChoice (CHC) Managed Care Organization,[1] reducing her Personal

---

[1] As the ALJ summarized:

> The Medicaid Home and Community-Based Services (HCBS) waiver program is authorized in [Section] 1915(c) of the Social Security Act[, 42 U.S.C. §1396n(c) (§1915(c))]. The program

**(Footnote continued on next page…)**

Assistance Service (PAS) hours from 168 hours per week to 126 hours per week as appropriate, and that Patient failed to demonstrate that 126 PAS hours were insufficient to meet her needs. After careful consideration, we reverse.

Patient is a 69-year-old female with diagnoses of anxiety, bipolar disorder, depression, cancer, obesity, hypoventilation syndrome, hypertension, hyperlipidemia, and asthma. Patient's household includes Patient, Christina Sepulveda-Morales (Daughter), Patient's daughter, and Patient's granddaughter. On

> permits a State to furnish an array of home and community-based services that assist Medicaid beneficiaries to live in the community and avoid institutionalization. The State has broad discretion to design its waiver program to address the needs of the waiver's target population. Waiver services complement and/or supplement the services that are available to participants through the Medicaid State plan and other federal, state, and local public programs as well as the supports that families and communities provide.

ALJ 3/16/23 Adjudication at 5; *see Fabie v. Department of Human Services* (Pa. Cmwlth., No. 256 C.D. 2019, filed January 13, 2020), slip op. at 1-2 n.1, wherein this Court stated:

> OBRA refers to the Omnibus Budget and Reconciliation Act of 1981 (Pub. L. No. 97-35). 55 Pa. Code §52.3. OBRA, in relevant part, established [HCBS] Medicaid waivers. These HCBS waivers enable individuals receiving medical assistance to access long-term care services and support in their home or community, rather than an institutional setting. The Commonwealth's medical assistance program is authorized by Article IV of the Human Services Code (formerly the Public Welfare Code), Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. §§401-493, and governed by the relevant provisions in Subchapter XIX of the Social Security Act, 42 U.S.C. §§1396-1396w-5, as well as DHS regulations set forth in the Medical Assistance Manual, 55 Pa. Code §§1101.11-1251.81. Regulations governing the Waiver Program are found in 55 Pa. Code §§51.1-52.65.").

*See also* Pa.R.A.P. 126(b)(1)-(2) ("As used in this rule, 'non-precedential decision' refers to . . . an unreported memorandum opinion of the Commonwealth Court filed after January 15, 2008. Non-precedential decisions . . . may be cited for their persuasive value.").

April 1, 2021, Patient was enrolled with AmeriHealth Caritas (AmeriHealth) for the CHC program and was approved for 168 PAS hours per week, *i.e.*, 24 hours per day, 7 days per week. On an unknown date, Patient was transferred to, and enrolled with, UPMC for the CHC program.

On February 10, 2022, UPMC completed a review of Patient's needs including an International Resident Assessment Instrument (InterRAI) Home Care Assessment, and determined that Patient needed 126 PAS hours each week, *i.e.*, 18 hours per day, 7 days per week. Patient's representative filed a timely appeal of UPMC's proposal to reduce Patient's PAS hours, so her PAS hours remained at 168 hours per week pending her appeal.

On an unknown date, UPMC and Patient's representative entered a stipulated settlement to reassess Patient's need for PAS hours. On August 18, 2022, UPMC completed a review of Patient's needs including an InterRAI Home Care Assessment. The Assessment showed that Patient: (1) was moderately impaired in the area of cognition; (2) was independent with setup help and eating; (3) needed extensive assistance with phone usage; (4) needed maximal assistance with managing finances and dressing her upper body; (5) was totally dependent with meal preparation, ordinary housework, managing medications, stairs, shopping, transportation, bathing, personal hygiene, dressing her lower body, walking, locomotion, toilet transfer, toilet use, and bed mobility; and (6) was completely incontinent of bladder and continent of bowel. Patient's representative agreed to a baseline of 126 PAS hours per week.

As a result, on August 22, 2022, UPMC issued a notice to Patient reducing her PAS hours from 168 hours per week to 126 hours per week. On an unknown date, Patient's representative filed a grievance with UPMC to dispute the

reduction of PAS hours. On October 25, 2022, a notice was sent to Patient indicating that an external medical review was conducted and the decision to reduce Patient's PAS hours was upheld, denying Patient's grievance.[2] On November 14, 2022, Patient's representative appealed the October 25, 2022 notice to DHS and the matter was assigned to the ALJ.

In the March 2, 2023 fair hearing before the ALJ, Erica Bond, the Service Coordinator Supervisor (SCS), testified for UPMC. *See* RR at 258a-81a. She provided a background to the InterRAI Home Care Assessment, and the time and task tool that is used for the CHC waiver program. The SCS testified that the number of PAS hours are determined through the time and task tool, considering the amount of time a task takes to accomplish, and who lives in the home. Both the InterRAI and the time and task tool records the answers given by the participant and the participant's representative during the assessment. The SCS testified about Patient's August 18, 2022 InterRAI assessment, which showed that Patient needed assistance with all Instrumental Activities of Daily Living (IADL) and Activities of Daily Living (ADL).[3] The time and task tool completed on August 18, 2022, found

---

[2] Specifically, the notice stated, in relevant part:

> The Medical Director has upheld the reduction of PAS hours to 126 hours per week. This is because the assessment and details provided do not show [Patient] has a need for 168 hours per week. The assessment shows their needs for meal preparation, housework, management of medications, stair use, shopping, transportation, bathing, hygiene, dressing, walking, transfer toilet, toilet use, and bed mobility, finances, phone use, and eating are met with the approved 126 hours per week.

Reproduced Record (RR) at 2a.

[3] As the ALJ explained:
**(Footnote continued on next page…)**

4

Under [C.F.R.] §435.217(b) [(2014)], a state agency may provide [HCBS] to individuals in the community who would be institutionalized in absence of HCBS. The HCBS Waiver program is authorized in §1915(c) of the Social Security Act. The program permits a [s]tate to furnish an array of services, including PAS. Under 42 [C.F.R.] §441.301(b), waiver services are furnished under a written plan of care based on individual evaluation. Under 42 [C.F.R.] §441.302(c)(2), HCBS recipients require periodic evaluation to determine if the recipient continues to need the level of care provided. . . . There is no dispute that [Patient] requires continued PAS. At issue is the number of weekly PAS hours that she requires.

* * *

The Application for 1915(c) HCBS Waiver: PA.0386.R04.07 - Jan 01, 2022, Appendix C-1/C-3 provides PAS for hands-on assistance to enable a participant to integrate more fully into the community and ensure the health, welfare, and safety of the participant. PAS are provided to meet the participant's needs as determined by an assessment and as outlined in the participant's service plan to complete ADLs, such as eating, bathing, dressing, and personal hygiene; health maintenance activities, such as bowel and bladder routines, ostomy care, catheter, wound care and range of motion exercises; routine support services, such as meal planning, keeping of medical appointments and other health regimens needed to support the participant; and assistance and implementation of prescribed therapies. PAS may include assistance with IADLs, such as laundry, housework, changing linens, and doing dishes associated with the preparation of a meal, but these tasks must not comprise the majority of the PAS hours.

The Application for 1915(c) HCBS Waiver: PA.0386.R04.07 - Jan 01, 2022, Appendix C-1/C-3 designates that PAS hours are to be used when informal supports such as other household members are not available to assist in the care of the participant. In this case, [Patient] resides with [Daughter] and granddaughter, who are providing the PAS hours for [Patient].

ALJ 3/16/23 Adjudication at 9-10.

a reported need for 126 PAS hours per week, and the hours used on the time and task tool are inflated to accommodate for emergency issues that could arise. Relevant herein, the SCS testified that PAS hours are "intended for physical health needs only," so that they are not for mental health needs or for when "the participant is sleeping, because that would be considered supervision." RR at 261a.

Patient's counsel objected to the SCS's testimony because she did not have direct knowledge of Patient's case. However, the ALJ ultimately overruled the objection because the SCS is not only the supervisor of the Service Coordinator who has handled Patient's case, but Daughter also testified that the SCS participated in the August 18, 2022 assessment by video, so the SCS has direct knowledge of Patient's case.

UPMC's counsel offered exhibits that Patient's counsel objected to as hearsay because they were not personally prepared by the SCS. However, the ALJ overruled the objection because Exhibits C-1 through C-13 were directly relevant to Patient's case and are business records. *See* RR at 10a-232a. The ALJ also overruled the objection to Exhibits C-14 through C-16 because they were excerpts from DHS's policy that DHS and UPMC use in the oversight of the HCBS Waiver program, which are available to the public. *See id.* at 233a-48a.

In addition, Patient's counsel objected as hearsay to the admission of SCS's statement that the medical review of the PAS hour reduction was upheld on review. However, the ALJ noted that although the medical director who reviewed Patient's case, and the Service Coordinator who reduced Patient's PAS hours, did not testify at the hearing, the reason for the hearing was Patient's appeal of the grievance to the reduction of hours. Thus, the statement of that fact was not hearsay, but the reason that Patient sought further review of the reduction.

At the hearing, Patient also provided the testimony of her treating psychiatrist, Alex Thomas, M.D. (Physician), who is familiar with Patient's mental health since 2013. *See* RR at 282a-86a. Physician testified that Patient is at risk of wandering and had an incident in the past when she left her home and was missing for some time. Physician expressed concern for Patient's health and safety if she is left alone.

Finally, Daughter testified at the hearing as well. *See* RR at 294a-328a. She explained that the care that she provides to Patient is during the overnight hours, which are the hours at issue in this case. Daughter stated that she helps Patient into bed by lifting each leg, one at a time, as Patient is unable to lift her legs on her own. Daughter explained that she must frequently reposition Patient, approximately every 15 minutes, as Patient is unable to move herself on her own to get comfortable. Daughter testified that Patient does not sleep more than three hours per night and often wakes up in pain, so she rubs salve on Patient's legs, gives Patient cannabidiol (CBD) drops or stronger medications if needed, and sits and reads the Bible to Patient to calm her down.

Ultimately, on March 16, 2023, the ALJ issued the Adjudication denying Patient's appeal. In relevant part, the ALJ explained:

> While the[] activities [provided by Daughter to Patient during the night] are kind and loving, they are not ADLs. The testimony provided for [Patient] at hearing was contrary and therefore, not credible. [The Patient's] [P]hysician testified that [Patient] is at risk for elopement without supervision. However, [Daughter] testified that [Patient] is bedridden and incapable of moving on her own. [Daughter] then contradicted her own testimony by agreeing that [Patient] is an elopement risk. Furthermore, [Daughter's] testimony that [Patient] does not sleep more than three hours per night does not seem credible. ***Even if she wakes frequently, [Patient] would likely nap at other***

*times later in the night or during the day, which would allow for the allocation of hours to be divided up differently for the times when [Patient] is sleeping.* It should be noted that in the time and task tool, the Service Coordinator allocated 49.7 hours of the 126 PAS hours for the Health and Safety of [Patient], which does not encompass any ADLs or IADLs. This seems reasonable to allow for any emergency issues that may arise.

*As there was not sufficient evidence offered to demonstrate that 126 PAS hours were not sufficient to meet [Patient's] needs, I find [DHS] made the correct determination through the assessment and the grievance process.*

ALJ 3/16/23 Adjudication at 10-11 (emphasis added). Accordingly, the ALJ issued an order denying Patient's appeal. On April 3, 2023, BHA's Chief ALJ issued the Order affirming the ALJ's decision, and Patient then filed the instant petition for review.[4]

On appeal,[5] Patient claims: (1) the ALJ erred in admitting hearsay evidence produced by UPMC; (2) UPMC's evidence did not sustain the burden of proving that Patient's hours warranted a reduction from 168 PAS hours of care per week to 126 PAS hours per week; and (3) the record does not contain substantial evidence that Patient is not entitled to any care during the time that she is at rest or sleeping. However, assuming that the ALJ did not err in admitting the purported hearsay evidence,[6] our review of the certified record reveals that the Order is not

---

[4] UPMC filed a Notice of Intervention in the appeal on May 15, 2023.

[5] Our review of the Order "is limited to determining whether an error of law was committed, whether necessary findings of fact were supported by substantial evidence, and whether constitutional rights were violated." *Bussoletti v. Department of Public Welfare*, 59 A.3d 682, 686 n.2 (Pa. Cmwlth. 2012) (citation omitted).

[6] As this Court has explained:

**(Footnote continued on next page…)**

8

supported by substantial evidence warranting the reduction in Patient's PAS hours to 126 PAS hours per week.

As noted above, 24 C.F.R. §441.302(c)(2) (2024) mandates:

*Assurance that the agency will provide for . . . [r]eevaluations*, at least annually, of each beneficiary receiving home or community-based services *to determine if the beneficiary continues to need the level of care provided and would, but for the provision of waiver services, otherwise be institutionalized in . . [a] hospital, a[n] NF, or an ICF/IID*.[7] (Emphasis added)].

Likewise, Section 1915(c)(2)(E) of the Social Security Act provides:

(2)    A waiver shall not be granted under this subsection unless the State provides assurances satisfactory to the Secretary [of Health and Human Services] that--

* * *

(E)    the State will provide to the Secretary annually, consistent with a data collection plan designed by the Secretary, information on the impact of the waiver granted under this subsection on the type and amount of medical

---

In addition, "[t]ypically, questions concerning the admission or exclusion of evidence in an administrative proceeding are within the discretion of the tribunal conducting the hearing and are not to be disturbed on appeal absent a finding of abuse of discretion." Further, to constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party. Evidentiary rulings which did not affect the decision will not provide a basis for disturbing the fact-finder's judgment.

*R.J.W. v. Department of Human Services*, 139 A.3d 270, 290 (Pa. Cmwlth. 2016) (citations omitted).

[7] As provided in 42 C.F.R. §§400.202 and 400.203 (2000), "NF" means a "skilled nursing facility." Also, as provided in 42 C.F.R. §400.200 (1986), "ICF/IID" stands for "intermediate care facility for individuals with intellectual disabilities."

assistance provided under the State plan and on the health and welfare of recipients.

42 U.S.C. §1396n(c)(2)(E).

Thus, even if it is assumed that the ALJ properly admitted all of UPMC's evidence, it was DHS's initial burden of proving by substantial evidence that Patient's necessary "level of care provided" had changed from the prior determination of around-the-clock care based on the plain language of the regulations and the statute.[8]  However, the *only* "evidence" relied upon by the ALJ to support the determination that Patient's level of care had changed was SCS's testimony that "[t]wenty-four hour care was not appropriate in this case," that PAS hours are "intended for physical health needs only," so that they are not for mental health needs or for when "the participant is sleeping, because that would be considered supervision."  RR at 261a, 270a.  There is simply no record evidence, including the InterRAI Home Care Assessment, which shows that Patient no longer "continues to need the level of care provided her."  24 C.F.R. §441.302(c)(2). Indeed, the August 18, 2022 InterRAI Home Care Assessment indicates that Patient has "Total dependence" with respect to walking or moving "between locations on [the] same floor indoors;" and "mov[ing] on and off [the] toilet or commode;" and "fully reliant on others for toilet use;" and is "fully reliant on others for bed mobility."  RR at 132a-35a.

Moreover, with regard to the diminution of Patient's PAS hours per week, the SCS testified that the reduced necessary hours were calculated as follows:

---

[8] *See, e.g.*, *Siemon's Lakeview Manor Estate v. Department of Public Welfare*, 703 A.2d 551, 556 (Pa. Cmwlth. 1997) ("[T]he Secretary's reliance on *Haygood*[ *v. Civil Service Commission*, 576 A.2d 1184 (Pa. Cmwlth. 1990), *appeal dismissed*, 605 A.2d 306 (Pa. 1992),] does not alter the requirement that the burdened party meet both the burden of production and the burden of persuasion.").

10

Q. You said that the whole purpose behind this program is not to address what ifs. Right?

A. What ifs are not covered, supervision for what ifs. Yes.

Q. Okay. With somebody who is prone to falling and needs help, isn't fall prevention a safety issue?

A. It is. That's addressed in the time tasking tool. In the time that was allotted.

Q. This time tasking tool, is this a computer-based analysis?

A. The entire thing is on my computer. It's like, auto generated for the baseline based on the information that i[s] entered that the service coordinator receives from the assessment.

Q. So, the person who is performing the assessment performs a subjective evaluation of functional capabilities, puts that into the computer system, and then the computer system is the one that generates the report.

A. The baseline. Yes.

Q. That report is among the paperwork that's been provided to the court for this hearing, correct?

A. Yes. The paperwork does show the baseline amounts. Yes.

Q. You also mentioned that there was no issue as it related to her hygiene that was included as any part of the underlying assessment, correct?

A. Her hygiene was included. There was no additional time added, so that the system generated time for that task, and no time was added to that.

Q. So, it's included, but it's included in the underlying computer-based assessment, not as additional time?

A. Correct.

11

RR at 279a-81a.

Where, as here, the SCS's and the medical director's opinions are based upon a report generated by a computer program instead of facts of record, it is insufficient *evidence* to support the determination that Patient's PAS hours should be decreased to 126 PAS hours per week. Indeed, as the Pennsylvania Supreme Court has noted:

> An expert cannot base his opinion upon facts which are not warranted by the record. No matter how skilled or experienced the witness may be, he will not be permitted to guess or to state a judgment based on mere conjecture. . . . 'It is the function of opinion evidence to assist the jury in arriving at a correct conclusion upon a given state of facts. To endow opinion evidence with probative value it must be based on facts proven or assumed, sufficient to enable the expert to form an intelligent opinion. The opinion must be an intelligent and reasonable conclusion, based on a given state of facts, and be such as reason and experience have shown to be a probable resulting consequence of the facts proved. The basis of the conclusion cannot be deduced or inferred from the conclusion itself. ***In other words, the opinion of the expert does not constitute proof of the existence of the facts necessary to support the opinion***.' (Emphasis added.)

*Collins v. Hand*, 246 A.2d 398, 404 (Pa. 1968) (citations omitted).

Accordingly, even though Daughter's testimony was rejected as not credible, there is simply no credible substantial evidence supporting the BHA's Order reducing the number of PAS hours in this case, as it is based on mere conjecture as to the calculations performed by the computer program. Such opinions, based upon these presupposed facts, "[c]an only be classified as mere guess or conjecture and 'would be to build a presumption on a presumption, which would build a smoke ladder into the skies of irresponsible speculation, which,

12

fortunately, the law prohibits.'" *Collins*, 246 A.2d at 404 (citation omitted). Stated simply, there is *no* record evidence that Patient can remain unassisted for six hours per day to support a reduction in her PAS hours to 126 hours per week.[9]

Accordingly, the Order is reversed, and the matter is remanded to DHS for the reinstatement of Patient's 168 PAS hours per week.

---

MICHAEL H. WOJCIK, Judge

---

[9] *See also Gurariy v. Zucker*, 152 N.Y.S.3d 28, 32 (N.Y. App. Div. 2021), wherein the New York Supreme Court, Appellate Division, stated:

> Given that no evidence to the contrary was submitted at the fair hearing demonstrating that the petitioner's toileting needs were not frequent, that she was able to change her diapers on her own at the rate required to keep her clean, or that the petitioner was able to reposition herself in her bed, where she spent most of the day, to accommodate the fact that her skin was described as fragile, the determination of the [Department of Health] to deny the petitioner's request for continuous personal care services as not medically necessary was not supported by substantial evidence and, thus, must be annulled.

(Citations omitted.); *Desher v. Southeastern Pennsylvania Transportation Authority*, 212 A.3d 1179, 1186 (Pa. Cmwlth. 2019) ("Though this Court, in its application of federal substantive law, is not bound by the decisions of federal district courts, federal circuit courts, or the courts of other states, we may cite such decisions when they have persuasive value.") (citations omitted).

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Miriam Cruz,                          :
                                      :
                    Petitioner        :
                                      :
             v.                       :  No. 418 C.D. 2023
                                      :
Department of Human Services,         :
                                      :
                    Respondent        :

# **O R D E R**

AND NOW, this 18th day of December, 2024, the order of the Department of Human Services (DHS) dated April 3, 2023, is REVERSED, and the above-captioned matter is REMANDED to DHS for proceedings consistent with the foregoing memorandum opinion.

Jurisdiction is relinquished.

_____
MICHAEL H. WOJCIK, Judge